Tilden R. WILKINSON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 81–2080.

United States Court of Appeals,
Fourth Circuit.

Argued March 3, 1982.

Decided April 27, 1982.

Howard I. Legum, Norfolk, Va. (Fine, Fine, Legum & Fine, Norfolk, Va., on brief), for appellant.

James A. Metcalfe, Asst. U. S. Atty., Norfolk, Va. (Elsie L. Munsell, U. S. Atty., John Franklin, III, Taylor, Walker & Adams, Norfolk, Va., on brief), for appellee.

Before BUTZNER, RUSSELL and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

We refer from time to time to a case as a hard one. We may mean that it is close and difficult to decide. Or we may mean, as we do here, that, while it is not so close, it is nevertheless difficult to decide because of its harsh impact on one of the parties. The other party to the case is innocent of any impropriety occasioning the hardship; whether others involved may have been equally free of criticism is a matter we need not address.

Here we have such a case.

On October 3, 1978, in the City of Virginia Beach, Virginia, the plaintiff, Tilden R. Wilkinson, as a pedestrian, was hit by an automobile driven by Richard Evans Gray, a first-class boatswain's mate in the United States Navy then serving aboard the U.S.S.

Miller which was undergoing repairs at a shipyard in Boston, Massachusetts.

Pursuant to orders from his commanding officer, Gray had driven a motor car leased by the U.S.S. Miller from Econo Car of Boston, a car-rental outfit, to the Norfolk, Virginia area to pick up and deliver certain items associated with the ship, including the ship's mail. Gray's residence was in Massachusetts. He was on a per diem allowance covering mileage, lodging and meals, and the accident occurred while Gray was returning to his hotel room after delivering the ship's mail with the intention of first stopping to eat dinner.

Promptly following the accident, Gray notified his commanding officer on the U.S.S. Miller and Econo Car of Boston. Shortly thereafter he was interviewed by a representative of the law firm retained to handle the claim made by Wilkinson as a consequence of injuries caused by the accident.

Plaintiff had promptly retained Howard I. Legum as counsel to represent him with respect to his claim against Gray. Legum ascertained that the car operated by Gray was leased from Econo Car and inaugurated discussions with the lawyers retained by the insurance carrier of Econo Car. Such counsel told Legum nothing to suggest that Gray had been operating the car in the course of his employment by the Government and Legum failed to explore the possibility that such was the case.

It was not until September 16, 1980, that is over 23 months after the accident, that Legum brought suit on behalf of Wilkinson by filing a motion for judgment in the Circuit Court of the City of Virginia Beach. Service on Gray was made via the Virginia long-arm statute. His last known address was shown to be the U.S.S. Miller, Boston, Massachusetts.

The responsive pleading made October 10, 1980, asserted that the accident occurred while Gray was acting within the scope of his employment [1] with the United States Navy, and sought dismissal for failure to comply with the Drivers Act, 28 U.S.C. § 2679(b), a provision of the Federal Tort Claims Act which reads:

> The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property or personal injury or death, resulting from the operation by any employee of the Government of any motor vehicle while acting within the scope of his office or employment, shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against the employee or his estate whose act or omission gave rise to the claim.

The pleading further pointed out that there had been no presentation "in writing to the appropriate Federal agency within two years after such claim accrue[d]," 28 U.S.C. § 2401(b), with the consequence that the tort claim was "forever barred." *Id.*

In April 1981, a removal to the United States District Court for the Eastern District of Virginia ensued and the United States was substituted as the party defendant. Discovery had taken place in the state court and affidavits were filed in the district court. Summary judgment then was granted to the United States.[2]

On appeal, the plaintiff-appellant contends that:

1) Gray was not acting within the scope of his employment when the accident took place.

2) The lack of awareness on plaintiff-appellant's part of a contention that Gray was acting within the scope of his employment excused the failure to file the administrative claim within two years of the accident.

It is inescapable, however, that Gray was acting in the scope of his employment. *Cooner v. United States*, 276 F.2d 220 (4th Cir. 1960); *Johnston v. United States*, 310 F.Supp. 1, 2 (N.D.Ga.1970) ("The question in this case is whether the alleged negligence of a National Guardsman, away from his home at a military base on temporary active duty, receiving per diem pay, who

---

1. Defined in 28 U.S.C. § 2671 as "acting in line of duty."

2. *Wilkinson v. Gray*, 523 F.Supp. 372 (E.D.Va. 1981).

drives to lunch at a public eating house in a truck furnished him by the government for that purpose, can be imputed to the United States government under the Georgia law of respondeat superior. The court holds that it can."); *Southern Motor Lines Co. v. Alvis*, 200 Va. 168, 170–72, 104 S.E.2d 735, 737–39 (1958).

Just as clearly, the passage of two years without the filing of the administrative claim was fatal to Wilkinson's case. *Wollman v. Gross*, 637 F.2d 544, 547 (8th Cir. 1980) (2–1 decision, rehearing *en banc* denied by an equally divided vote, 646 F.2d 1306 (8th Cir. 1981)) ("Prior to bringing a suit a claim must be presented in writing to the appropriate administrative agency 'within two years after such claim accrues'"); *Kielwien v. United States*, 540 F.2d 676, 679 (4th Cir. 1975), *cert. denied*, 429 U.S. 929, 97 S.Ct. 491, 50 L.Ed.2d 588 (1976) ("That requirement is jurisdictional and is not waivable.").

Wilkinson would escape the holding in *Wollman* and the cases there cited,[3] on the grounds that he was lulled by Gray or by the United States into a false sense of security. *Cf. Kelley v. United States*, 568 F.2d 259, 262 (2d Cir. 1978), holding that "the Government could not lull plaintiffs into a false sense of security by waiting until plaintiffs' time to file an administrative claim had expired and thereupon move to be substituted and to dismiss."

The Government here is not open to such a charge. Econo Car's insurance carrier was the party with whom Legum, counsel for Wilkinson, negotiated prior to filing suit. As in *Wollman v. Gross, supra*, 637 F.2d at 549, plaintiff-appellant was aware at the time of the accident that Gray was employed by the Navy.

He was unaware only of the legal significance of this fact. The purpose of the statute of limitations is to require the reasonably diligent presentation of tort claims. This may require a plaintiff to obtain appropriate legal counsel and together with counsel discover the facts and their possible legal ramifications so as to enable plaintiff to bring the suit within a reasonable time. *Id.*[4]

Gray himself did all that he could reasonably be expected to do in promptly informing his commanding officer and Econo Car. He cooperatively gave an interview to counsel provided by Econo Car's insurance carrier to defend him. Gray's commanding officer has not been shown to have had any duty to supply information to Wilkinson or Legum. It has nowhere in the record been established that Gray's commanding officer even knew that there was any lack of awareness by them that the proper and exclusive defendant was the United States Government, or that there was a legal necessity for Wilkinson to file, within two years, an administrative claim. The commanding officer, after all, was a sailor, not a lawyer. (Even a sea lawyer should not be charged with knowledge of such legal intricacies.)

The attorneys for the Government were not shown to have known that the accident had even occurred until a date more than two years after the accrual of the claim. The motion to dismiss in the state court of October 10, 1980 was filed by private counsel retained by the insurance carrier for Econo Car. That private counsel represented Gray in all aspects of the state court proceedings. Insofar as the record in the

---

3. *West v. United States*, 592 F.2d 487 (8th Cir. 1979); *Steele v. United States*, 599 F.2d 823 (7th Cir. 1979); *Lien v. Beehner*, 453 F.Supp. 604 (N.D.N.Y.1978); *Baker v. United States*, 341 F.Supp. 494 (D.Md.), *aff'd*, (4th Cir. 1972); *Driggers v. United States*, 309 F.Supp. 1377 (D.S.C.1970). *See also McGowan v. Williams*, 481 F.Supp. 681 (N.D.Ill.1979) [*reversed*, 623 F.2d 1239 (7th Cir. 1980), on grounds other than those involved in the present case]; *Reiser v. Di Pietro*, 78 F.R.D. 541 (N.D.Ill.1978); *Fuller v. Daniel*, 438

F.Supp. 928 (N.D.Ala.1977); *Miller v. United States*, 418 F.Supp. 373, 377 (D.Minn.1976). 637 F.2d at 550.

4. The court in *Wollman* further observed, 637 F.2d at 549 n.6:

It does not seem unreasonable to expect Wollman, who was aware that Gross was an ASCS employee, to so inform his counsel, or for counsel to then research the status of ASCS employees for consideration of an FTCA claim.

case discloses, it appears that the first communication to Wilkinson or Legum of the fact that Gray had been acting in the scope of his naval employment was the pleading of October 10, 1980, filed seven days after the expiration of the two year period.[5] Nothing suggests that the pleading was delayed or untimely.

The first appearance of Government lawyers occurred[6] on April 6, 1981 with the filing of the petition for removal, followed on April 30, 1981 by a motion for substitution of the United States as party defendant and motion to dismiss. Nothing suggests that Government counsel had any knowledge whatever of the proceedings until well after the two years available to the plaintiff-appellant to meet a necessary precondition to suit had fully expired.

Reviewing the circumstances of the case, it is evident that the two year requirement had not been met, and that unambiguously, therefore, the federal tort claim of Wilkinson was "forever barred." 28 U.S.C. §§ 2401(b), 2675(a). It is equally clear that there could be no proceeding against the governmental employee, Gray. 28 U.S.C. § 2679(b). No less established is the fact that the Government has not behaved in any unfair way, and that, as between it and Wilkinson, the latter, or, more realistically, his counsel, brought about the consequences resulting from counsel's inaction. There simply is no basis for a finding that "the actions of [Gray] or of the United States lulled plaintiff into a false sense of security. . . ." *Wollman v. Gross, supra,* 637 F.2d at 550.

Accordingly, the order of dismissal in favor of the United States should be affirmed. That is not to say that we rejoice in the result, for we are left with the strong impression that Wilkinson has been denied the right to pursue his claim for injuries for reasons which were not, viewed as a whole and not simply as between himself and the United States, his fault. *Cf.* Thomsen, J. in *Baker v. United States,* 341 F.Supp. 494, 496 (D.Md.1972), *affirmed,* No. 72–1708 (4th Cir. Nov. 30, 1972):

> That result in the instant case seems unfair, since no one realized until too late that Smith was in the course of his employment by the government at the time of the accident. However, no facts which would ordinarily amount to an estoppel against Smith, his insurer or the government have been shown. Other courts have applied the statute strictly against plaintiffs in circumstances which seem to me more favorable to the plaintiff than those in the cases at bar. See, e.g., *Mann v. United States,* [399 F.2d 672 (9 Cir. 1968)] *supra.* If this case is appealed, I would be happy to be reversed. But under the statute and the authorities, I must dismiss the suits.[7]

Judge Butzner has written an appealing dissent arguing that the administrative claim did not "accrue" when the accident occurred, but rather only "when the plaintiff [knew] both the existence and the cause of his injury." Reliance is placed on *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), a case involving a claim for medical malpractice.

---

**5.** Legum filed an administrative claim on October 20, 1980, seventeen days beyond the two year limit.

**6.** Legum on or after October 10, 1980, telephoned a claims attorney for the United States Navy located on the Naval Base in Norfolk, Virginia. The claims attorney could find no record in his office of Gray's having reported the accident to the naval office, nor any record of Gray's having been in the Norfolk area on October 3, 1978.

**7.** *See Wollman v. Gross, supra,* 637 F.2d at 549:
> Admittedly this application of the statute of limitations has especially harsh ramifications here where the record indicates little prejudice to the government if it had to defend this lawsuit. However, to accept Wollman's argument would be in effect rewriting the two-year statute of limitations of 28 U.S.C. § 2401(b) to allow the state statute of limitations to apply whenever plaintiff is unaware of the status of the defendant as a federal employee acting within the scope of his employment. While this may be desirable, Congress has clearly not chosen to do this and any change is its prerogative and not that of the courts.

■ In the first place, such an argument was not advanced by the plaintiff either before the district judge or before us during oral argument or in his brief. We, consequently, should be disinclined to pay attention to the argument. *Dees v. W. M. Webb*, 590 F.2d 144, 146 (5th Cir. 1979) ("... Webb may not raise this issue the first time on appeal"); *United States v. One 1971 Mercedes-Benz*, 542 F.2d 912, 915 (4th Cir. 1976) ("Questions not raised and properly preserved in the trial forum will not be noticed on appeal in the absence of exceptional circumstances."); *Preferred Risk Mutual Ins. Co. v. Thomas*, 372 F.2d 227, 232 n.* (4th Cir. 1967) ("In argument before this court counsel for Preferred undertook to raise an additional point of error which was not raised below nor was it mentioned or argued in Preferred's brief. We do not consider it."). *But see Washington Gas Light Co. v. Virginia Electric and Power Co.*, 438 F.2d 248, 251 (4th Cir. 1971).

That rule makes especially good sense here, for how could we, in fairness, reverse on a point the appellee has never had an opportunity to be heard on?

The second reason why the dissent's argument is unpersuasive is the very kind of thing the appellee, if afforded an opportunity, would doubtless have raised. The sole authority we have been able to locate on the point is squarely contrary to the position adopted in the dissent. *Miller v. United States*, 418 F.Supp. 373, 377 (D.Minn. 1976):

Third, the plaintiff urges that his cause of action did not "accrue" within the meaning of § 2401(b) until May 9, 1974, when the United States Attorney informed him by letter that Voss had been acting within the scope of his Federal employment. Plaintiff makes the startling assertion that only then did his claim "arise or become enforceable." There is no merit to this theory. The plaintiff's right to assert a claim against the Federal government was in no way dependent on the Government's admission that Voss had been acting within the scope of his employment; the letter of May 9, 1974, was thus not a prerequisite to the assertion of the claim required by

§ 2401(b), and such a claim was ripe from and after the day of the collision. To accept the plaintiff's contrary contention would require adoption of a rule whereby no tort statutes of limitations would commence running in favor of any employer until he had conceded to an accident victim that the other party to the accident was acting within the scope of his employment. Plaintiff has cited no case to support that rule of law.

The approach in *Miller* makes imminent good sense. In medical malpractice, a patient customarily does not know, from the time of the injury, (a) that he has in fact been injured, or (b) that he has a basis for suing the doctor. Deferring accrual to a later date than the one on which the injury, unbeknownst to the plaintiff, actually occurred is realistic and accords with the meaning of accrual.

■ However, as Judge Butzner has acknowledged (At 1004), "[o]rdinarily a claim accrues on the date of injury." In the instant case, the fact of injury and the identity of the person committing the injury were immediately beknownst. Plaintiff was possessed of sufficient knowledge to put him on inquiry as to whether Gray, a naval rating on active service, was operating within the scope of his employment. In any case, from the outset both the existence of his injury and its cause were known. What was not known, at most, was the fact that the Government would indemnify and hold harmless a naval rating who, nevertheless, clearly was and at all times remained the cause of plaintiff's injury.

Hence, *Kubrick*'s reference, 444 U.S. at 122, 100 S.Ct. at 359, to a need to know who has inflicted the injury in order to trigger accrual, is not pertinent. It is inescapable that Gray was known to have inflicted the injury.

AFFIRMED.

BUTZNER, Circuit Judge, dissenting:

I believe the district court erred when it granted summary judgment for the United States because Tilden R. Wilkinson's admin-

istrative claim was presented two years and twenty-one days after he was struck by a car operated by Richard E. Gray, a government employee. A brief chronology places the issues raised by this appeal in perspective. Wilkinson was injured about 10:00 p. m. on October 3, 1978. His attorney filed an action in state court on September 17, 1980, after unsuccessful attempts to settle with the insurance carrier for the rental car that Gray was operating. In a pleading filed October 10, 1980, Gray's attorney asserted that Gray was a government employee acting in the scope of his employment. On October 20, 1980, Wilkinson's attorney mailed an administrative claim to the Navy, which was filed on October 24, 1980. The procedures then followed by the government are outlined in the government's brief, which I accept as accurate. After noting the filing of the administrative claim on October 24, 1980, the brief, page 7, continues:

> There followed a period of approximately four months of discovery in the state court on the question of scope of employment while, simultaneously, the Navy claims attorney investigated the circumstances to determine whether Gray had indeed been acting within the scope of his employment at the time of the accident.
>
> After the claims attorney for the Navy determined to his satisfaction that Gray was acting within the scope of his employment at the time of the accident, he requested representation by the United States Attorney who thereupon removed the case from state to federal court and moved for dismissal on the grounds that plaintiff had failed to file an administrative claim as a jurisdictional prerequisite to suit and the statute of limitations had expired.

On April 6, 1981, the United States District Attorney certified to the state court that Gray was a government employee acting in the scope of his employment and petitioned for removal pursuant to the Federal Drivers' Act, Pub.L.No. 87–258, 75 Stat. 539 (1961) [28 U.S.C. § 2679(b)–(e)]. The district court subsequently dismissed the action because Wilkinson had not filed an administrative claim within two years from the date of his injury.[1]

The statute on which the district court relied, 28 U.S.C. § 2401(b), does not by its terms expressly require the administrative claim to be presented within two years of the date of injury. Instead, Congress specified that the claim must be presented "within two years after such claim accrues ...." To determine when "such claim accrues," I would adopt for the purposes of the Drivers' Act, the principles expressed in *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). There the Court accepted the government's construction of § 2401(b) to the effect that a medical malpractice claim accrues "when the plaintiff knows both the existence and the cause of his injury ..." 444 U.S. at 113, 100 S.Ct. at 355.[2] Here Wilkinson knew of the existence of the injury on the night he was struck. But it is uncontroverted that he did not then know the critical fact that is essential for a claim against the United States—namely, that his injury was caused by a government employee acting within the scope of his employment. Nor was there immediately available to him information about Gray's mission. By October 9, 1978, when Wilkinson consulted an attorney, Gray had left Virginia without disclosing to the local naval claims officer that he had been involved in an accident. Wilkinson's attorney wrote the rental car agency, which had furnished the car Gray was driving, on October 16, 1978, but he received no reply until the following December. Moreover, not until after suit was filed did Gray come forward and reveal that he was acting within the scope of his government employment.

---

1. *Wilkinson v. Gray*, 523 F.Supp. 372 (E.D.Va. 1981).

2. In *Kubrick*, the Court went on to hold that accrual is not postponed until the claimant learns that the injury was negligently inflicted.

444 U.S. at 123, 100 S.Ct. at 360. Adhering to *Kubrick*, I do not suggest that accrual should be deferred until Wilkinson knew or in the exercise of reasonable care should have known that Gray acted *negligently* while engaged in the government's business.

In the district court, Wilkinson raised the issue which he presses on appeal. The district court's opinion states it in the following terms:

The plaintiff's administrative claim was filed with the Naval Legal Service Office more than two years after the accident occurred. The plaintiff argues, however, that the Government is precluded from asserting this defense because the plaintiff was not aware that Gray was acting within the scope of his employment until the defendant's attorney filed a Motion to Dismiss in the state court after the two-year limitation period of 28 U.S.C. § 2401(b) had expired. *See* 523 F.Supp. at 375.

Thus, in the district court, the question was squarely presented: Did Wilkinson's cause of action accrue within the meaning of § 2401(b) when he was injured or when he became aware that Gray was acting within the scope of his employment? The district court held that it accrued on the date of the accident, stating: "[T]here is no basis for a categorical exception to Rule 2401(b) where the plaintiff is not at the outset aware that the defendant was acting within the scope of his employment." 523 F.Supp. at 375–76.

I cannot join in approving the rationale of the district court that the claim accrued on the date of injury. Instead, I would hold that Wilkinson's claim accrued within the meaning of § 2401(b) in the context of the Drivers' Act when he or his attorney knew, or in the exercise of reasonable care should have known, that his injury was caused by a government employee acting within the scope of his employment. *See Kubrick*, 444 U.S. at 113 and 122, 100 S.Ct. at 355 and 360.

Ordinarily a claim accrues on the date of injury. Sometimes, as here and as in *Kubrick*, the issue of accrual presents a mixed question of law and fact. In this case, however, remand for the development of the facts appears unnecessary. The administrative notice of claim was only 21 days beyond the two year period. Although Wilkinson's attorney learned soon after the accident that Gray was a government employ-

ee, the district court did not find that Wilkinson or his attorney knew, or should have known, within 21 days after the accident that Gray, driving a rental vehicle after normal working hours, was acting in the scope of his authority. Moreover, the government's brief indicates that although the Navy began its investigation shortly after October 24, 1980, several months elapsed before the naval claims attorney "determined to his satisfaction that Gray was acting within the scope of his employment at the time of the accident . . . ." Consequently, following *Kubrick*, it is logical to conclude that the claim did not accrue within 21 days after the accident, and Wilkinson's administrative claim was timely.

Having stated what I believe to be the proper construction of § 2401(b) when read with the Drivers' Act, I now explain my reasons for concluding that application of the *Kubrick* principle—the claim accrues when the plaintiff knows both the existence and cause of his injury—is appropriate for claims subject to the Drivers' Act. This Act, § 2679(b), provides that the Federal Tort Claims Act shall be the exclusive remedy for injury resulting from the "operation by any employee of the Government of any motor vehicle while acting within the scope of his office or employment . . . ." Thus, Congress did not apply the Tort Claims Act to every injury resulting from the operation of a vehicle by a government employee. Moreover, the Drivers' Act does not create any presumption that the employee was acting in the scope of his employment. Unless the government concedes this essential element of the Tort Claims Act, the burden is on the claimant to prove by a preponderance of the evidence that the accident was caused by an employee acting within the scope of his employment. Often this essential fact will be self-evident—for example, when the driver of a United States mail truck causes the injury. But when, as here, a government employee is driving a non-government vehicle after normal working hours in an area where many government employees regularly drive on private business, the nature of the employee's activity

is not readily apparent.[3] Furthermore, the facts necessary for the claimant to determine whether the employee is acting in the scope of his employment are frequently known, as here, only to the government employee or his superior officers. Indeed, by the government's own reckoning its investigation to determine the true nature of Gray's mission at ten o'clock on the night of the accident took several months, and the government does not suggest that the investigation was in any way prolonged because the administrative claim was filed within two years and twenty-one days rather than two years.

Furthermore, the Drivers' Act serves a dual purpose. It not only confers a cause of action against the government in an appropriate case, it also grants immunity to the government employee who is engaged in the government's business. In this respect, the Act drastically alters the common law rule governing an injured person's claim against a principal and agent, which permits the claimant to recover from the agent even if he cannot establish the principal's vicarious liability. The Act's departure from the common law suggests an additional reason why the common law concept of accrual of a cause of action on the day of injury is inappropriate.

Although *Kubrick* was a medical malpractice case, the Court's analysis of the concept of accrual in § 2401(b) is pertinent to the Drivers' Act. In *Kubrick*, 444 U.S. at 122, 100 S.Ct. at 360, the Court accepted as the time of accrual the date the plaintiff possesses "the critical facts that he has been hurt and who has inflicted the injury." The second critical fact—"who has inflicted the injury"—has two components: (1) the name of the person and (2) his identity as a government employee acting in the scope of his employment. Until the plaintiff has had a reasonable opportunity to ascertain this critical fact, he cannot determine

whether he has a claim against an individual or the government. Until then, he cannot determine who, in the eyes of the law, inflicted his injury. Obviously, by the terms of the Drivers' Act he cannot have a claim against both the principal and the agent as he otherwise would have at common law.

Therefore, the claim against the government should not accrue until the claimant in the exercise of reasonable diligence has an opportunity to ascertain whether he can establish an essential element of a cause of action under the Tort Claims Act—that is, whether the injury was caused by an employee acting within the scope of his employment. To hold, as the district court did, that the claim accrues on the date of the injury is contrary to the plain language of § 2401(b) and the sensible construction of this section accepted by the Supreme Court in *Kubrick*. The vice of the district court's decision is its determination that a claim against the government accrues before even a diligent claimant learns the critical fact that the driver who injured him has given cause for such a claim. Thus, the district court's decision effectively reduces the two year limitation period from the time the claim accrues that Congress expressly provided in § 2401(b).

Other judges, though approaching the issue from a somewhat different perspective, have perceived the inequity of the result reached by the district court. *See Wollman v. Gross*, 637 F.2d 544, 550–55 (8th Cir. 1980) (Adams, J., dissenting); 646 F.2d 1306 (1981) (Lay, Bright, McMillian and Arnold, JJ., dissenting from denial of rehearing en banc). Indeed, the result reached by the district court is so unjust and so contrary to congressional intent that a similar case would not be dismissed in the Second and Tenth Circuits.[4] In *Kelley v. United States*, 568 F.2d 259 (2d Cir. 1978), the court held that when a claimant institutes suit against

---

**3.** The cities and counties adjacent to Hampton Roads have an exceptionally large number of naval and other government personnel.

**4.** It also appears that a similar case would not be dismissed in the Seventh Circuit. *See McGowan v. Williams*, 623 F.2d 1239 (7th Cir.

1980), which approves *Whistler v. United States*, 252 F.Supp. 913 (N.D.Ind.1966). *McGowan* also cautions that *Steele v. United States*, 599 F.2d 823 (7th Cir. 1979), on which the *Wollman* majority and the district court relied, does not pertain to actions governed by the Drivers' Act. *See* 623 F.2d at 1243.

a government employee in a state court within the time limited by state law, it is unnecessary to determine whether the action accrued at a date later than the accident. Timely institution of the suit in a state court precludes dismissal even though the administrative claim is filed more than two years after the accident. 568 F.2d at 262–68.[5] *See also Henderson v. United States*, 429 F.2d 588 (10th Cir. 1970). *Kelley* and *Henderson* reach the proper result on the basis of logical reasoning that is consistent with the legislative history. In some respects, their rationale is preferable to the reasons assigned in this dissent. Nevertheless, I believe that *Kubrick*, which was decided after *Kelley* and *Henderson*, provides adequate, authoritative precedent for reversing the district court and reinstating Wilkinson's action.[6]

---

**5.** In the district court and on appeal, Wilkinson relied on *Kelley.* The district court mistakenly, I believe, considered that *Kelley* was inapposite on the ground that there the government had lulled the plaintiff into a false sense of security. *See* 523 F.Supp. at 376. *Kelley,* however, was not decided on the basis that the government lulled the claimant into a false sense of security. Although the court of appeals referred to this description of the government's conduct by the district court, *see* 568 F.2d at 262, it did not predicate its decision on this theory of estoppel. *See* 568 F.2d at 262–68.

**6.** *Kubrick,* it should also be noted, was decided three years after *Miller v. United States,* 418 F.Supp. 373 (D.Minn.1976), which is the single authority cited in opposition to the concept of "accrual" that *Kubrick* explains. Lacking the benefit of *Kubrick,* the *Miller* court quite understandably erred, and its ruling, I believe, is no longer acceptable as sound precedent.