Regis Ann GOULD, as Parent Guardian and next of friend of Aaron Russell Gould and Adrienne Marie Gould, Regis Ann Gould, as Special Administrator of the Estate of Gary Francis Gould; Regis Ann Gould, Plaintiffs–Appellants,

v.

U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES; Public Health Service, Defendants–Appellees.

No. 88–3091.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1988.

Decided Sept. 8, 1989.

Joseph Cornelius Ruddy, Jr. (Law Offices, Joseph C. Ruddy, Jr., Hyattsville, Md., on brief), for plaintiffs-appellants.

Sally Kraft Trebbe (Litigation Branch, Business and Administrative Law Div., Dept. of Health and Human Services, Washington, D.C.; Breckinridge L. Willcox, U.S. Atty., Juliet Ann Eurich, Asst. U.S. Atty., Baltimore, Md., on brief), for defendants-appellees.

Before SPROUSE and CHAPMAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

SPROUSE, Circuit Judge:

Regis Ann Gould appeals from the district court's dismissal of her action against

the United States under the Federal Tort Claims Act ("FTCA") on behalf of her deceased husband's estate, her children, and herself for the allegedly negligent medical care administered to her husband by government employees. The district court held that Gould's claim was time barred under 28 U.S.C. § 2401(b). We reverse and hold that Gould's claim was timely because that claim did not begin to accrue until she first learned that one of the treating physicians was a federal employee.

## I

In her complaint, Gould alleges that her husband, Gary Francis Gould, began to experience headaches, fever, nausea, stiff neck, and other related symptoms on August 27, 1980. On August 30, when his symptoms continued, Mr. Gould was medically examined by James Kevin O'Rourke, M.D., at the South County Family Health Care Corporation, a private facility in Anne Arundel County, Maryland. O'Rourke diagnosed Mr. Gould's condition as a virus and instructed him to return home and to seek bed rest and regular intake of liquids. That afternoon, when Mr. Gould's condition continued to deteriorate, O'Rourke directed him to a local hospital where he was admitted. On September 1, Barry Nathanson, M.D., another physician working for the South County Health Care Corporation, began to assist O'Rourke.

Although Mr. Gould's condition further worsened while he was hospitalized, O'Rourke continued to insist that the decedent was suffering from a virus and that no additional consultation was necessary. On September 3, after repeated demands by Mr. Gould's family, O'Rourke agreed to consult an internal medicine specialist. The specialist immediately diagnosed Rocky Mountain Spotted Fever and initiated antibiotic treatment, but Mr. Gould died less than twenty-four hours later on September 4, 1980.

In August 1983, Mrs. Gould brought a medical malpractice suit before the Health Claims Arbitration Board of Maryland against O'Rourke and Nathanson for their alleged negligent care of her husband. This claim was filed within Maryland's three-year limitations period for medical malpractice claims. *See* Md.Ct. & Jud. Proc.Code Ann. § 5–109. On September 26, 1983, during the course of that litigation, the government informed Gould's counsel that O'Rourke was a commissioned officer in the United States Public Health Service. Three months later, the government told Gould's counsel that Nathanson was a civilian employee with the Public Health Service.* Under the FTCA, federal district courts have exclusive jurisdiction over actions involving negligence by federal employees while acting within the scope of their employment, 28 U.S.C. § 1346(b), and the United States is the proper defendant in such actions, 28 U.S.C. § 2679. The Board accordingly dismissed Gould's action against O'Rourke and Nathanson on December 16, 1985, nearly two-and-a-half years after Gould initiated the state proceedings, finding that they were federal employees and, therefore, not subject to suit in a state forum.

On August 2, 1985, Gould filed a FTCA medical negligence claim with the Department of Health and Human Services, Division of Public Health Service. In her claim, Gould stated that O'Rourke and Nathanson, although federal employees, had held themselves out as agents and employees of the private health facility. The Department denied Gould's tort claim on August 28, 1985, on the grounds that it was time-barred under the FTCA two-year statute of limitations, 28 U.S.C. § 2401(b).

Gould initiated this present action in district court in February 1987. The court granted the government's motion to dismiss the action pursuant to rule 12(b)(1) of the Federal Rules of Civil Procedure, holding that Gould's claim had accrued on September 4, 1980, the date of her husband's death, and, therefore, it was barred under section 2401(b).

---

* O'Rourke and Nathanson were working as federal employees in the private health facility for the South County Family Health Care Corporation under a government assignment to practice in a "health manpower shortage area" pursuant to 42 U.S.C. §§ 254e, 254f.

## II

Under 28 U.S.C. § 2401(b), "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues...." The question of when a FTCA claim "accrues" under section 2401(b) was addressed by the Supreme Court in *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). In that case, a Veterans Administration physician applied an antibiotic to Kubrick's leg as part of post-operative procedures. Kubrick soon noticed a loss of hearing, and, in January 1969, another physician told him that the hearing loss was probably due to the antibiotic treatment. Not until 1971, however, did a physician tell Kubrick that the antibiotic treatment had been improper, and Kubrick filed a FTCA claim within two years of that conversation. The government asserted that Kubrick's claim had accrued in January 1969 when he was informed that the antibiotic treatment had caused the hearing loss and, therefore, that his claim, filed in January 1973, was time barred. The district court and Third Circuit, however, rejected this contention, finding that Kubrick's cause of action did not accrue until 1971 when he learned that the antibiotic treatment had been improper.

The Supreme Court reversed. The Court distinguished between a plaintiff's ignorance of the facts concerning his injury or its cause and his ignorance of the legal significance of those facts and noted:

That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury.

*Id.* at 122, 100 S.Ct. at 359. The Court concluded, therefore, that "accrual" of an FTCA claim did not require awareness by the plaintiff that his injury was negligently inflicted and that Kubrick's claim had ac-

crued in January 1969 when he came into possession of all the facts about the cause of his injury. *Id.* at 123, 100 S.Ct. at 360.

Since the Supreme Court decided *Kubrick*, we have twice considered questions concerning when FTCA claims accrue under section 2401(b). In *Wilkinson v. United States*, 677 F.2d 998 (4th Cir.), *cert. denied*, 459 U.S. 906, 103 S.Ct. 209, 74 L.Ed.2d 167 (1982), a rental car driven by a sailor on business for the Navy collided with Wilkinson's automobile. At the time of the accident, Wilkinson knew that the other driver was employed by the Navy but not that the driver was on government business. In rejecting Wilkinson's argument that his claim did not accrue until he learned that the sailor was acting within the scope of his federal employment, we stated:

In the instant case, the fact of injury and the identity of the person committing the injury were immediately beknownst. Plaintiff was possessed of sufficient knowledge to put him on inquiry as to whether [the sailor], a naval rating on active service, was operating within the scope of his employment.

*Id.* 677 F.2d at 1002.

In *Henderson v. United States*, 785 F.2d 121 (4th Cir.1986), a car driven by a substitute United States mail carrier collided with Henderson's automobile, and the accident report indicated that the mail carrier's car was used by the government. Henderson contended that her claim did not accrue until nine months after the collision when the government informed her that the mail carrier was a federal employee acting within the scope of her employment. We held, however, that the accident report indicating the car was being used by the government "was sufficient notice to prompt [Henderson] to explore the legal ramifications of the government's involvement." *Id.* at 126. We concluded, therefore, that Henderson's claim had accrued on the date of the collision and held that her FTCA claim, filed twenty-seven months after that date, was time-barred under section 2401(b).

## III

The rationale underlying *Kubrick, Wilkinson* and *Henderson* persuades us that Gould's claim did not accrue until she first learned that O'Rourke, the primary treating physician, was a federal employee. The Supreme Court held in *Kubrick* that a FTCA plaintiff need not be aware of the legal significance of the facts surrounding an injury in order for a claim to accrue. Kubrick's claim, therefore, accrued when he became aware of the facts relevant to the cause and existence of his injury even though he did not realize until much later that these facts could create a malpractice cause of action. Similarly, in *Wilkinson* and *Henderson,* the plaintiffs' causes of action accrued when they became aware or were put on inquiry notice that a government employee was involved in their injury even though they did not become aware of the legal consequences of that fact until much later. In this case, however, although Gould was probably aware soon after her husband's death that his death was caused by medical malpractice, she had no way of knowing that the principal causative actor contributing to his death was a government employee. She was, therefore, not "in possession of the critical fact[ ] ... [of] who has inflicted the injury," *Kubrick,* 444 U.S. at 122, 100 S.Ct. at 359, and, before the government informed Gould that O'Rourke was a federal employee, did not have any "knowledge to put [her] on inquiry," *Wilkinson,* 677 F.2d at 1002, or any "notice to prompt [her] to explore the legal ramifications of the government's involvement." *Henderson,* 785 F.2d at 126.

From the time that Mr. Gould first received medical treatment from O'Rourke at South County Family Health Care Corporation's private facility on August 30, 1980, until Mrs. Gould discovered that O'Rourke was a federal employee on September 26, 1983, she simply had no indication that O'Rourke and Nathanson were United States Public Health Service employees and thus had no reason to suspect that her claim was governed by the FTCA. The physicians, working in a private health facility, were indistinguishable from other physicians on the facility's staff. She timely filed a state claim in the appropriate Maryland forum when all information available to her indicated that such was the appropriate forum. Her later FTCA claim was filed with the Department of Health and Human Services on August 2, 1985—within two years from the time she discovered that O'Rourke was a federal employee and that she could only pursue her claim in a federal forum. To deprive her of the federal cause of action under these circumstances would be both unfair and contrary to the Supreme Court's decision in *Kubrick* that the FTCA limitation period begins to run only when a claimant becomes aware of the "critical facts" constituting the "cause" of an actionable injury.

In view of the above, the judgment of the district court is reversed and remanded.

REVERSED AND REMANDED.

CHAPMAN, Circuit Judge, dissenting:

The majority, I believe, misconstrues the clear language of 28 U.S.C. § 2401(b), disregards decisions of this Circuit and the Supreme Court, and exceeds this Court's authority by creating a blanket exception to the limitation on the federal government's consent to be sued—rewriting, in effect, the terms and reach of the statute. The majority not only creates an exception to the language of the statute, but in the process changes the purpose of the limitation provision by formulating an open-ended rule which absolves prospective plaintiffs of their burden and obligation to exercise reasonable diligence in investigating and promptly presenting claims. Accordingly, I dissent.

### I.

In a letter dated August 8, 1983, plaintiffs' counsel, Joseph C. Ruddy, Jr., requested information from the Department of Public Health regarding the "exact work status" of Dr. O'Rourke. This inquiry was initiated more than two years and eleven months after the injury to the decedent and its cause were known by the plaintiffs. The Department of Health and Human Services ("HHS") was promptly notified of

plaintiffs' request and responded to the inquiry. On September 2, 1983, a HHS attorney notified plaintiffs' counsel by telephone of Dr. O'Rourke's status as a federal employee at the time he treated the decedent.[1] The following day, plaintiffs' counsel was advised by HHS that Dr. Nathanson was also a federal employee at the time of such treatment. Mr. Ruddy received written confirmation of Dr. O'Rourke's employment status on September 26, 1983, and similar notice of Dr. Nathanson's status on December 16, 1983.

The plaintiffs, at this time, took no action against the United States. Rather, on September 2, 1983, within hours of the expiration of the claim under Maryland's three-year statute of limitation, plaintiffs initiated a claim against the individual physicians before the Health Claims Arbitration Board in the State of Maryland alleging medical negligence.[2]

On December 16, 1985, the Health Claims Arbitration Board action against Drs. O'Rourke and Nathanson was dismissed upon the finding that the doctors were employed by the United States Public Health Service and the alleged wrongdoing fell within the scope of their employment. Thus, they were not subject to suit in a state court or forum pursuant to 28 U.S.C. § 1346(b).

In early August 1985, prior to dismissal of the claim before the Health Claims Arbitration Board, an administrative tort claim was presented to the Department of Health and Human Services, Division of Public Health Service, alleging negligence by National Health Service Corps physicians in failing to expeditiously diagnose and treat Gary F. Gould for Rocky Mountain Spotted Fever. This claim was denied in August 1986 on the grounds that it was barred by the statute of limitation applicable to claims prosecuted under the FTCA, 28 U.S.C. § 2401(b).

In February 1987, plaintiffs initiated the present action in the United States District Court for the District of Maryland. The defendants contended that the action was barred by the two-year limitation provision of 28 U.S.C. § 2401(b). Plaintiffs countered that since they had neither direct nor implicit knowledge of the status of the physicians as federal employees, and since the exercise of due diligence would not have revealed this fact, the statute of limitation should be tolled until plaintiffs were made aware of the fact that the physicians were federal employees and the claim was covered by the FTCA. The district court rejected this argument and found that the statutory time period set forth in § 2401(b) had expired and therefore the court lacked jurisdiction as a matter of law.

## II.

It is well established that the United States Government, as sovereign, is immune from suit unless it consents to be sued. The terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit. *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). Congress created a limited waiver of sovereign immunity in the FTCA. 28 U.S.C. §§ 2671–2680. This waiver permits suit only on terms and conditions strictly prescribed by Congress. *Honda v. Clark,* 386 U.S. 484, 501, 87 S.Ct. 1188, 1197, 18 L.Ed.2d 244 (1967).

Although the FTCA gives limited consent to suits against the federal government for

---

1. In his August 8, 1983, letter, Mr. Ruddy invited the Department to respond to his request by contacting him or his staff by telephone. The notes from office telephone conversations, identified in the record as defendants' Exhibit II, show that HHS personnel attempted to contact Mr. Ruddy by telephone in response to his request as early as August 18, 1983. HHS personnel spoke with his secretary, but Mr. Ruddy was apparently on vacation and unavailable until September.

2. Plaintiffs erroneously state that the suit against the individual physicians was filed in "August of 1983," Appellants' Brief at 5, which was before HHS personnel informed plaintiffs' counsel that Dr. O'Rourke was a federal employee of the Public Health Service. The records of the Maryland Health Claims Arbitration Board reveal that this claim was, in fact, filed on September 2, 1983, which was the same day a HHS attorney contacted plaintiffs' counsel by telephone to notify him of Dr. O'Rourke's status as a federal employee.

torts committed by its employees while acting within the scope of their official duties, the Act specifically requires an initial presentation of a claim to the appropriate federal agency within two years of the accrual of the cause of action and a final denial by that agency as a jurisdictional prerequisite to suit under the Act. 28 U.S.C. §§ 2401(b), 2675(a); *Kielwien v. United States,* 540 F.2d 676, 679 (4th Cir.), *cert. denied,* 429 U.S. 979, 97 S.Ct. 491, 50 L.Ed.2d 588 (1976); *West v. United States,* 592 F.2d 487, 492 (8th Cir.1979).

The applicable statute of limitation within the framework of the FTCA provides: "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues...." 28 U.S.C. § 2401(b). This time limitation is jurisdictional and nonwaivable. *Kielwien,* 540 F.2d at 679.

Statutes of limitation, which "are found and approved in all systems of enlightened jurisprudence," *Wood v. Carpenter,* 101 U.S. (11 Otto) 135, 139, 25 L.Ed. 807 (1879), represent a legislative determination that "even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Order of Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944). While affording plaintiffs what legislatures deem reasonable time to present claims, statutes of limitation give defendants and courts a degree of protection from having to confront controversies in which the search for truth may be thwarted by the loss of evidence, whether by the death or disappearance of witnesses, fading memories, loss of physical evidence, or the like. *United States v. Marion,* 404 U.S. 307, 322 n. 14, 92 S.Ct. 455, 464 n. 14, 30 L.Ed.2d 468 (1971); *Burnett v. New York Central Railroad Co.,* 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965).

Section 2401(b) represents a deliberate balance struck by Congress whereby a limited waiver of sovereign immunity is conditioned upon the prompt presentation of tort claims against the government. The Supreme Court, in recognizing this balance, has instructed the judiciary to abstain from extending or narrowing § 2401(b) beyond that which Congress intended and thereby defeating its obvious purpose. *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979).

Applying these principles, federal courts with few exceptions have dismissed complaints where a plaintiff failed to file a claim with the appropriate federal agency within the two year limitations period, even in cases where the plaintiff's failure to submit a claim in a timely manner was the result of the plaintiff's ignorance of the defendant's status as a federal employee. *Flickinger v. United States,* 523 F.Supp. 1372, 1375 (W.D.Pa.1981). Courts have held that despite the harsh impact of this rule on plaintiffs, *Wilkinson v. United States,* 677 F.2d 998, 1001 (4th Cir.), *cert. denied,* 459 U.S. 906, 103 S.Ct. 209, 74 L.Ed.2d 167 (1982), and "strong equitable considerations notwithstanding, the two-year limitation period of 28 U.S.C. § 2401(b) cannot be tolled or waived." *Lien v. Beehner,* 453 F.Supp. 604, 606 (N.D.N.Y.1978). *See also United Missouri Bank South v. United States,* 423 F.Supp. 571, 577 (W.D.Mo.1976) (limitation provision of FTCA not to be extended by implication or by equitable considerations).

Although FTCA liability is determined "in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b), federal law determines when a claim accrues. *Stoleson v. United States,* 629 F.2d 1265, 1268 (7th Cir.1980); *Portis v. United States,* 483 F.2d 670, 672 n. 4 (4th Cir.1973); *Sexton v. United States,* 832 F.2d 629, 633 n. 4 (D.C.Cir. 1987); *Wehrman v. United States,* 830 F.2d 1480, 1482–83 (8th Cir.1987). In *Kubrick v. United States,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the Supreme Court reiterated that the general rule under the FTCA "has been that a tort claim accrues at the time of the plaintiff's injury," although in medical malpractice cases it is thought to extend "until the

plaintiff has discovered both his injury and its cause." *Id.* at 120, 100 S.Ct. at 358.

The clear import of *Kubrick* is that a claim accrues within the meaning of § 2401(b) when the plaintiff knows or, in the exercise of due diligence, should have known both the existence and the cause of his injury. "This decision signifies a retreat from the expansive view of 'accrual' previously adopted by a number of the circuits, including the Fourth Circuit." *Dessi v. United States,* 489 F.Supp. 722, 724 (E.D.Va.1980). Under *Kubrick,* the court concluded in *Dessi,*

> nothing more than knowledge of injury and causation is required for the cause of action to accrue. The action accrues even if the claimant believes that his injury was unavoidable and did not indicate negligent treatment. It is the plaintiff's burden, once he knows of his injury and its cause, to determine within the limitations period whether or not to file suit.

*Id.* at 725. *See also Gilbert v. United States,* 720 F.2d 372, 374 (4th Cir.1983) ("The Supreme Court has determined that a cause of action accrues within the meaning of [28 U.S.C.] § 2401(b) when a prospective plaintiff knows of both the existence of his injury and its cause."); *Dearing v. United States,* 835 F.2d 226, 228 (9th Cir.1987) ("A medical malpractice claim does not accrue under the FTCA until the plaintiff discovers, or reasonably should have discovered, his injury and its causes."); *Wehrman,* 830 F.2d at 1483 (same).

The question presented by this case is when did the plaintiffs' claim "accrue" within the meaning of the FTCA? Did the cause of action accrue when plaintiffs learned both of the existence and cause of the decedent's injury, or did it only accrue when plaintiffs also learned the legal iden-

tity of the alleged tort-feasors as federal employees. I believe plaintiffs' claim accrued, in accordance with *Kubrick,* on September 4, 1980, upon the death of Gary Francis Gould. Plaintiffs at this time were aware of the existence of the injury and its cause, including the identity and conduct of attending physicians. This sufficiently armed plaintiffs with the "critical facts" to investigate the claim and present it within the two-year statute of limitation.

The plaintiffs argue that in addition to knowledge of the injury and its cause *Kubrick* implies that a claim does not accrue until a plaintiff learns the legal identity of the alleged tort-feasor as a federal employee.[3] The statute of limitation should be tolled, plaintiffs continue, when pertinent information such as knowledge of the injury or the legal identity of the tort-feasor are in the control of the putative defendant, unavailable to the plaintiff or at least difficult to obtain. This is the rule the majority adopts. Significantly, the legal identity of the tort-feasor was presumed in *Kubrick.* Nowhere in *Kubrick* do I find any reference to the legal identity of the tort-feasor.

This rule has been considered and rejected in this Circuit. In *Baker v. United States,* 341 F.Supp. 494 (D.Md.1972), *aff'd per curiam,* No. 72–1708 (4th Cir. Nov. 30, 1972), it was held that an automobile negligence action filed in state court within the three-year Maryland limitation period but more than two years after the accident was forever barred pursuant to 28 U.S.C. § 2401(b). A defendant driver, who was acting within the scope of his government employment at the time of the accident, initially handled the claim through his insurance company and his own attorney. Some five years after the accident the defendant brought the claim to the attention of government officials, after which the

---

**3.** The suggestion is made by the majority, as well as the plaintiffs, that the term "cause" means both the cause of the injury from a medical point of view and the legal identity of the alleged tort-feasors. Such a reading of the word "cause" in this context, I believe, is not to be found in our legal precedents. Quoting *Dyniewicz v. United States,* 742 F.2d 484, 486 (9th

Cir.1984), the Third Circuit rejected this broad interpretation of "cause": "Discovery of the cause of one's injury, however, does not mean knowing who is responsible for it. The 'cause' is known when the immediate physical cause of the injury is discovered." *Zeleznik v. United States,* 770 F.2d 20, 23 (3d Cir.1985).

government promptly removed the claim to federal court where the United States was substituted as the party defendant. The plaintiff did not discover until after the statute of limitation had run that the driver who allegedly caused the accident was a federal employee acting within the scope of his employment.[4] "All cases cited or found," the district court concluded, "have held that the [FTCA] two-year limitation period applies, and that such suits cannot be remanded to the state court to proceed against the government employee individually." *Baker*, 341 F.Supp. at 495–496 (citations omitted). The court further stated:

> That result in the instant case seems unfair, since no one realized until too late that Smith was in the course of his employment by the government at the time of the accident. However, no facts which would ordinarily amount to an estoppel against Smith, his insurer or the government have been shown. Other courts have applied the statute strictly against plaintiffs in circumstances which seem to me more favorable to the plaintiff than those in the cases at bar. See, e.g., *Mann v. United States*, [399 F.2d 672 (9th Cir.1968)]. If this case is appealed, I would be happy to be reversed. But under the statute and the authorities, I must dismiss the suits.

*Id.* at 496. We affirmed this judgment of the district court.

In *Wilkinson v. United States*, 677 F.2d 998 (4th Cir.), *cert. denied*, 459 U.S. 906, 103 S.Ct. 209, 74 L.Ed.2d 167 (1982), a rented car driven by a sailor on business for the Navy collided with the plaintiff's automobile. At the time of the collision, the plaintiff knew that the other driver was employed by the Navy. There was no indication, however, that the plaintiff was aware that the driver was actually on government business. We rejected the plaintiff's assertion that the cause of action did not accrue until he learned that the sailor was acting within the scope of his employment at the time of the accident and thus covered by the FTCA. *Id.* 677 F.2d at 1000. Speaking for the majority, Judge Murnaghan emphasized that the government employee and government officials responded to the plaintiff's claim in a reasonable, timely and fair manner. Moreover, attorneys for the government in *Wilkinson*, like those in the case before us, "were not shown to have known that the accident had even occurred until a date more than two years after the accrual of the claim.... No less established is the fact that the Government has not behaved in any unfair way, and that, as between it and [plaintiff], the latter, or, more realistically, his counsel, brought about the consequences resulting from counsel's inaction." *Id.* at 1000–1001. The same observations, it seems, could be made in the case at bar.[5]

Judge Butzner, in dissent, proposed the rule that plaintiff's "claim accrued within the meaning of § 2401(b) in the context of the Drivers' Act [28 U.S.C. § 2679(b)–(e)] when he or his attorney knew, or in the exercise of reasonable care should have

---

**4.** As in the case at bar, the plaintiff was unaware that the defendant driver was a federal employee, neither was there evidence apparent to others involved in the accident to put them on notice that the defendant was a federal employee acting within the scope of his employment.

**5.** The plaintiff in *Wilkinson* arguably presented a more appealing case than the one before us today in that the case was initiated in a state court *prior* to expiration of the FTCA statute of limitation. Once the plaintiff was aware of the legal significance of the defendant driver's status as a federal employee, plaintiff sought to remove the suit to federal court. Nevertheless, we barred the federal action because it was filed

in federal court shortly after the FTCA statute had run.

Plaintiffs in the case at bar, however, apparently made no attempt to investigate or file their claim until two years and eleven months after plaintiffs knew of the injury and its cause. Plaintiffs did not file an administrative claim with the HHS until nearly five years after Mr. Gould's death and nearly two years after receiving confirmation of the attending physicians' work status. It was six and a half years after the injury before suit was initiated in federal court. Such delays by the plaintiffs surely put defendants at a disadvantage in defending the suit against them.

known, that his injury was caused by a government employee acting within the scope of his employment." *Id.* at 1004 (Butzner, J., dissenting).

In *Henderson v. United States*, 785 F.2d 121 (4th Cir.1986), a substitute U.S. mail carrier collided with the plaintiff's automobile. Although the plaintiff had reason to know that the vehicle which struck her may have been a government vehicle, she argued that her cause of action did not accrue until she ascertained that the driver was a federal employee. In rejecting the argument, we held that there was sufficient information available to the plaintiff to put her on notice that the other driver was an agent of the federal government.

The rule the majority creates today would establish an exception that would change all precedents as to when a medical malpractice action accrues, and would be against the clear admonition in *Kubrick* that courts should carefully construe the statute of limitation for the FTCA so as not to extend the limited waiver of sovereign immunity beyond that which Congress intended. *Id.* at 117–118, 100 S.Ct. at 356–57. The holding of the majority would greatly expand the rule that was unsuccessfully proposed by the dissent in *Wilkinson*, because the majority places no burden upon a plaintiff or a plaintiff's attorney to exercise reasonable care, to investigate or to take any action to determine the employment status of an alleged tort-feasor. The majority excuses such inaction by prospective plaintiffs and their attorneys with its holding "the rationale underlying *Kubrick*, *Wilkinson* and *Henderson* persuades us that Gould's claim did not accrue until she first learned that O'Rourke, the primary treating physician, was a federal employee."

Such a holding ignores the well established rule that once a prospective plaintiff learns of his injury, he is on notice that there may have been an invasion of his legal rights and that he should investigate whether another may be liable to him. *Zeleznik v. United States*, 770 F.2d 20, 22 (3d Cir.1985), *cert. denied*, 475 U.S. 1108, 106 S.Ct. 1513, 89 L.Ed.2d 913 (1986).

While *Wilkinson* and *Henderson*, unlike *Baker*, arguably differ from the present controversy in that there was no indication that the defendants in the case *sub judice* were federal employees, *Wilkinson* and *Henderson* indicate that plaintiffs have an affirmative duty to inquire as to the legal identity of the defendant. There is no evidence that Mrs. Gould sought to ascertain or was denied access to information concerning the employment status of the treating physicians prior to the expiration of the limitation period. Neither is there evidence that the treating physicians "held themselves out as agents and employees of the private health facility" so as to mislead or deceive the plaintiffs or otherwise hide their legal identity as federal employees. *Kubrick*, *Baker*, *Wilkinson* and *Henderson*, I believe, stand for the proposition that a cause of action accrues once the existence of an injury and its cause are known, and the statute of limitation under the FTCA will not be tolled until a plaintiff learns that an alleged tort-feasor is a federal employee.

The Second Circuit held in *Kelley v. United States*, 568 F.2d 259, 262 (2d Cir.), *cert. denied*, 439 U.S. 830, 99 S.Ct. 106, 58 L.Ed.2d 124 (1978), that when the government intentionally delays in order to invoke the statute of limitation, the statute is tolled.[6] In the case at bar, however, there is no evidence that the government stalled the discovery process or otherwise blocked

---

**6.** Several courts have held in automobile accident cases involving federal employees that the strict two-year statute of limitation should not bar claims in federal courts when a state court action or an administrative claim was initiated before the two-year period expired, thereby giving the government notice of such a claim within the limitation period. *See, e.g., McGowan v. Williams,* 623 F.2d 1239 (7th Cir.1980); *Cham-*

*bly v. Lindy,* 601 F.Supp. 959 (N.D.Ind.1985); *Harris v. Burris Chemical,* 490 F.Supp. 968 (N.D. Ga.1980). Such exceptions are not universally recognized in the federal courts. Moreover, an exception of this nature would not apply in this case since the plaintiffs did not initiate their first action until more than two years *after* the death of Mr. Gould.

plaintiffs from obtaining information within the limitation period. Indeed, the evidence is to the contrary. While it is true that the employment status of the attending physicians was not made known to plaintiffs at the time treatment was given, it is also true that plaintiffs made no inquiry as to the physicians' employment status until August 1983. When asked, the government responded promptly to plaintiffs' request for this information. Unfortunately, such requests were not made until the statute of limitation had expired. The district court, I believe, correctly observed: "With the death and its cause discovered on September 4, 1980, due diligence is not present when an initial inquiry about who employed the tort-feasors is made 35 months later and then instituting the administrative tort claim two years after the inquiry."

The facts indicate that plaintiffs failed to exercise due diligence. Indeed, there is nothing in the record to suggest that prior to August 1983 plaintiffs' counsel made any effort to investigate the legally significant facts which plaintiffs contend would have been undiscoverable even if due diligence had been exercised. This argument, it seems, impliedly concedes that plaintiffs failed to exercise due diligence in investigating the elements of their claim. Plaintiffs have failed, in my estimation, to meet their burden and duty of exercising due diligence.

The government is under no obligation to notify every prospective plaintiff of its identity and involvement through its employees in all potential legal actions. *Van*

*Lieu v. United States,* 542 F.Supp. 862, 866 (N.D.N.Y.1982). The burden is on the plaintiff to discover the employment status of the tort-feasor and to bring suit within the applicable limitation period. *See Dessi,* 489 F.Supp. at 725 ("It is the plaintiff's burden, once he knows of his injury and its cause, to determine within the limitations period whether or not to file suit."); *Zeleznik,* 770 F.2d at 23 (once a party learns of his injury he is put on notice of a potential claim and "the burden is upon him to determine within the limitations period whether any party may be liable to him").

It will not suffice for plaintiffs to assert baldly that "even due diligence would not have discovered the fact that the physicians" were federal employees. The burden is on plaintiffs to show that due diligence was exercised and that critical information, reasonable investigation notwithstanding, was undiscoverable.[7] No evidence was offered to support the assertion that "critical facts" were undiscoverable. Indeed, the government's prompt response to plaintiffs' request for information contradicts this contention. No impediment, other than plaintiffs' inaction, shielded the physicians' legal identity. In summary, there is neither allegation nor evidence that the government delayed, misled or otherwise obstructed plaintiffs in determining the attending physicians' employment status.

Plaintiffs' construction of the limitation statute, adopted by the majority, would obviate the necessity of due diligence, even when the injury and its cause are known and a minimum inquiry would have led

---

7. In oral argument, plaintiffs' counsel excused plaintiffs' failure to exercise due diligence prior to August 1983 by suggesting that Mrs. Gould was reluctant to relive this tragic episode through litigation, and it was not until the Spring or Summer of 1983 that Mrs. Gould felt sufficiently fortified to press forward with her claim. While one is sympathetic to her plight, this is not a legally recognized justification for sleeping on one's claim. As the court acknowledged in *Sexton v. United States,* 832 F.2d 629, 636 (D.C.Cir.1987):

[A]ny statute of limitations that puts inquiry burdens on a plaintiff, as this one clearly

does, *see Kubrick,* 444 U.S. at 123 & n. 10, 100 S.Ct. at 360 n. 10, entails a degree of ghoulish behavior. Patients or survivors, whose instinct may well be to shut off from their minds the grim experience through which they have passed, are required instead to follow up on their leads. For persons of any sensitivity this must be a difficult or even repugnant process. Yet, to protect defendants from stale claims, legislatures put potential plaintiffs to the hard choice of proceeding with such inquiries or risking loss of possible claims.

plaintiffs to discover in a timely manner the employment status of the treating physicians. The majority removes incentives for the timely investigation and prompt presentation of claims. The blanket exception to § 2401(b), which the majority creates, enables a plaintiff to maintain a FTCA action against the government years after plaintiff's injury and its cause are well known if, for any reason, it escaped the plaintiff's attention—even absent reasonable investigation—that the alleged tort-feasor was a government agent acting within the scope of his employment. This open-ended rule vitiates the very purpose of the statute of limitation.

The plaintiffs further contend that their claim should not be barred by the statute of limitation because they were "blamelessly ignorant" of the federal government's involvement, and such involvement could not have been presumed, implied or discovered, even after the exercise of due diligence. The Eighth Circuit, in *Wollman v. Gross*, 637 F.2d 544, 548–49 (8th Cir.1980), *cert. denied*, 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981), rejected the suggestion that the doctrine of "blameless ignorance" extends the date of "accrual" until the moment when the plaintiff becomes aware of the defendant's status as a federal employee. The purpose of the statute of limitation is to require the reasonably diligent presentation of tort claims. This may require a plaintiff to obtain legal counsel promptly and together with counsel discover the critical facts and all of their possible legal ramifications so as to enable the plaintiff to bring suit within a reasonable time. *Id.* 637 F.2d at 549. As stated by the Supreme Court in *Kubrick:*

> A plaintiff such as Kubrick, armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government.

*Kubrick*, 444 U.S. at 123, 100 S.Ct. at 360. *See id.* at 128, 100 S.Ct. at 362 (Stevens, J., dissenting) ("A plaintiff who remains ignorant through lack of diligence cannot be characterized as 'blameless.' "); *Sexton*, 832 F.2d at 633.

When the facts of a case become so grave as to alert a reasonable person that there may have been negligence in a patient's treatment, the statute of limitation begins to run against the claimant's cause of action. *See West*, 592 F.2d at 492–93, *quoting Hulver v. United States*, 562 F.2d 1132, 1134 (8th Cir.1977), *cert. denied*, 435 U.S. 951, 98 S.Ct. 1576, 55 L.Ed.2d 800 (1978). In the case at bar the plaintiff was immediately aware of the failure to properly diagnose and treat and she knew that Drs. O'Rourke and Nathanson were the decedent's attending physicians. With this information of the physicians' errors followed by the patient's death, a reasonable person would have been alerted at the time of the death that such death may have been the result of medical negligence.

I am not unmindful that a strict adherence to the requirements of the statute of limitation provision under the FTCA often works a substantial hardship on plaintiffs and may have a harsh impact on a party innocent of any impropriety. Statutes of limitation often make it impossible to enforce what are otherwise valid claims. Although I recognize the hardship resulting to the plaintiffs in this case, I believe we have no choice but to apply the law as written. To accept plaintiffs' arguments would be rewriting the FTCA to allow broad, open-ended exceptions to §§ 2675(a) and 2401(b). *Flickinger*, 523 F.Supp. at 1376–77. "Although exceptions to the applicability of the limitations period might occasionally be desirable, we are not free to enlarge that consent to be sued which the Government, through Congress, has undertaken so carefully to limit." *Mann v. United States*, 399 F.2d 672, 673 (9th Cir. 1968). *See also Wollman*, 637 F.2d at 549. As the Supreme Court has instructed, it is clearly the prerogative of Congress, not

that of the judiciary, to reform the terms and scope of waiver of sovereign immunity beyond that which Congress intended. *Kubrick*, 444 U.S. at 117–19, 100 S.Ct. at 356–58.

"It goes without saying," as the *Kubrick* Court observed, "that statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims." *Kubrick*, 444 U.S. at 125, 100 S.Ct. at 361. Yet, they serve important, well-established purposes affirmed throughout our jurisprudence. We are bound to give them effect until such time as the creator of such provisions, the legislative branch, exercises its prerogative to amend the statute.

### III.

I believe the rule the majority articulates creates a perverse incentive for prospective plaintiffs to avoid the reasonable investigation and prompt presentation of medical malpractice claims involving federal employees, even after knowledge of an injury and its cause should have put a plaintiff on notice of an invasion of his legal rights. I cannot agree that the result reached by the majority today accords with the clear language of the statute or with congressional intent embodied in the FTCA or with the precedents of this Court or the Supreme Court. I respectfully dissent.