UNITED MISSOURI BANK SOUTH, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 73 CV 516–W–4.

United States District Court, W. D. Missouri, W. D.

Dec. 16, 1976.

David K. Hardy and Logan J. Wilson, Shook, Hardy & Bacon, Kansas City, Mo., for plaintiff.

Vernon A. Poschel, Asst. U. S. Dist. Atty., Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

ELMO B. HUNTER, District Judge.

This is a civil action brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 *et seq.* Plaintiff alleges that by reason of a prior perfected security interest in accounts receivable from Medicaid of Mission East, Inc., plaintiff was entitled to receive certain checks from the Missouri Department of Public Health and Welfare made payable to Mission East, Inc. and to apply the proceeds therefrom to the payment of certain promissory notes from Mission East, Inc. Plaintiff further alleges that on or about March 25, 1971, and thereafter, defendant appropriated and converted those checks and the proceeds therefrom, that Mission East, Inc. defaulted in its payment of the promissory notes, and that defendant has failed and refused to return either the Medicaid checks or the proceeds therefrom to plaintiff despite plaintiff's demands therefore.

Defendant contends that this action should be dismissed on the basis of lack of jurisdiction for the reasons that plaintiff has failed to state a claim cognizable under the Federal Tort Claims Act, that plaintiff's claim has been barred by the statute of limitations, and that the exception to the Tort Claims Act for actions involving claims of interference of contract rights applies to plaintiff's claim. In addition, defendant asserts that plaintiff did not have a superior security interest in the Medicaid accounts receivable at issue herein, and that defendant is not liable for conversion because the contested Medicaid checks were taken by a court-appointed receiver or in accordance with the court decree entered after plaintiff intervened in the receivership proceedings and from which plaintiff did not appeal.

The relevant facts are as follows. On May 19, 1966, Recon Corporation executed a promissory note and Deed of Trust securing the payment of the promissory note to the Bronx Savings Bank. The real property with which the Deed of Trust was concerned was known as the Jon Lynne Townhouse, Kansas City, Missouri; the Deed of Trust contained an assignment of all rents, profits and income of the mortgaged property to the Bronx Savings Bank, but permitted Recon Corporation to collect rents, profits and income from the property for use in accordance with the FHA Regulatory Agreement between Bronx Savings Bank, Recon Corporation, and the Federal Housing Commission, which was recorded on May 19, 1966. A financing statement, reflecting the security interest of the Bronx Savings Bank in the real property, was filed in the Office of the Secretary of State of Missouri on May 26, 1966, and with the Recorder of Deeds of Jackson County, Missouri, on June 13, 1966. Neither the Bronx Savings Bank nor defendant have filed a continuation statement or other document extending the effective period for which their perfected security interest in the personal property of Mission East, Inc., applied.

On November 15, 1967, defendant insured the payment of the aforesaid promissory note and Deed of Trust by Recon Corporation to the Bronx Savings Bank pursuant to the terms of the National Housing Act, 12 U.S.C. §§ 1701 *et seq.* On May 18, 1970, Recon Corporation conveyed all the assets of the nursing home known as the Jon Lynne Townhouse, including all real property and furnishings, equipment and supplies, and all other personal property located on the premises to Mission East, Inc. As consideration for this conveyance, Mission East, Inc., assumed Recon Corporation's obligations under the note and Deed of Trust held by the Bronx Savings Bank and the

conditions imposed under the Regulatory Agreement.

On and between May 26, 1970, and February 19, 1971, Mission East, Inc., executed and delivered to plaintiff a series of promissory notes for moneys received from plaintiff which Mission East, Inc., was to use and which it did use to meet its operating expenses and to make necessary repairs to the nursing home. To secure payment of the promissory notes, Mission East, Inc., assigned to plaintiff its accounts receivable from Medicaid, which were made in the form of periodic payments to Mission East from the Missouri Division of Welfare.[1] Subsequently, the Missouri Division of Welfare disbursed accounts receivable from Medicaid directly to plaintiff.

On February 23, 1971, Mission East, Inc., being in default on the promissory note held by the Bronx Savings Bank, the Bronx Savings Bank assigned its interest in the Deed of Trust to defendant United States of America in consideration of receipt of the balance of the principal remaining due under the promissory note. On March 19, 1971, this Court, in the case of *United States v. Recon Corp., et al.,* Case No. 19210–4, granted the prayer of the United States for an appointment of a receiver and directed Walter V. Coburn to take immediate possession of all mortgaged property and to protect, preserve, manage and control that property until further Order of the Court. After March 23, 1971, when plaintiff notified the Missouri Division of Welfare of the appointment of a receiver, until September 17, 1971, the Missouri Division of Welfare disbursed Mission East, Inc.'s accounts receivable from Medicaid to the court-appointed receiver in an amount in excess of plaintiff's prayer in this action.

On August 10, 1971, the Substitute Trustee, acting on behalf of defendant United States under the Deed of Trust assigned to it by the Bronx Savings Bank, sold the real property to defendant for the sum of $914,-000. On August 10, 1971, the Substitute Trustee, acting on behalf of defendant, received a bid of $126,000 from the Secretary of Housing and Urban Development for all the personal property belonging to, and located in and on the premises of, the Jon Lynne Townhouse.

On August 11, 1971, plaintiff voluntarily entered its appearance before this Court in the Recon Corporation receivership proceedings, and the Court entered an Order temporarily directing Coburn to collect, preserve and maintain all accounts receivable of Mission East, Inc., and to expend none of them. On August 16, 1971, this Court entered an Order permitting Coburn to expend all necessary funds for medicine, foods, supplies and other emergency items at the nursing home. On September 17, 1971, this Court terminated the operating duties of Coburn as receiver for defendant and ordered Coburn to turn over to defendant all accounts receivable received after that date. From September 30, 1971, to November 29, 1971, the Missouri Division of Welfare continued to mail Mission East, Inc.'s accounts receivable from Medicaid to Coburn, in an amount in excess of plaintiff's prayer in this action.

On May 1, 1973, after oral conversations regarding plaintiff's claim against defendant arising out of the foregoing facts, the president of plaintiff mailed a letter to defendant, demanding the sum of $10,497.02. On June 25, 1973, defendant made a written response to plaintiff's claim, informing plaintiff of defendant's decision to disallow the claim to the accounts receivable from Medicaid of Mission East, Inc., and stating that the FHA Regulatory Agreement provided defendant with a lien prior to plaintiff's on the rents and profits of Mission East, Inc.

Plaintiff contends that the acts of defendant in asserting its superior right to the

---

1. Pursuant to the laws of the State of Missouri, plaintiff caused financing statements reflecting its security interest to be filed in the Office of the Recorder of Deeds of Jackson County, Missouri, on May 28, 1970, and in the Office of the Secretary of State of Missouri on June 1, 1970. Certified copies of the security agreement and the assignment of accounts receivable were sent by plaintiff to the Missouri Division of Welfare.

accounts receivable in its prayer for appointment of a receiver, in acquiring and disposing of the Medicaid checks which were expended for the benefit of defendant in the actual operation of the nursing home, in transferring the Medicaid receivables when it sold to itself the personal property of the nursing home on August 10, 1971, and in refusing to reimburse plaintiff for the amount demanded, amount to a tortious conversion cognizable under the Federal Tort Claims Act.

Although other of defendant's assertions may be meritorious as well, this Court is of the opinion that it lacks jurisdiction in this case. It is well settled that the United States, as sovereign, is immune from suit unless it has consented to be sued. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *Iowa Public Service Co. v. Iowa State Commerce Comm.*, 407 F.2d 916, 920 (8th Cir. 1969), cert. denied 396 U.S. 826, 90 S.Ct. 71, 24 L.Ed.2d 77. A corollary to the immunity doctrine is the rule that the United States may define the conditions under which actions are permitted against it. *Honda v. Clark*, 386 U.S. 484, 501, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967); *Peterson v. United States*, 428 F.2d 368, 369 (8th Cir. 1970). Two conditions imposed by the United States on suits under the Federal Tort Claims Act are a two-year statute of limitations and a requirement that claims first be presented to and finally denied by the appropriate federal agency. 28 U.S.C. §§ 2401(b) and 2675(a).

As a part of the Government's consent to suit, the statute of limitations cannot be waived, so that a claim filed after the running of the statute is beyond the jurisdiction of the Court. *Wolak v. United States*, 366 F.Supp. 1106, 1110 (D.Conn. 1973); *Crown Coat Front Co. v. United States*, 363 F.2d 407 (2d Cir. 1966), rev'd on other grounds, 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256. It is the duty of the Court to consider the statute of limitations with respect to claims against the United States even when it has not been put in issue by the Government. 366 F.Supp. at 1110. The applicable statute of limitations herein, 28 U.S.C. § 2401(b), provides:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

The comment concerning the 1966 amendment to § 2401(b) clarifies this language by stating the requirement of presentation of tort claims to the appropriate agency in writing within two years after the claim accrues *and* commencement of an action within six months after receipt of the final denial. 28 U.S.C. § 2401(b), as amended (Supp.1976 at 277).[2]

As defendants properly have pointed out, the determination of when a claim accrues for the purposes of beginning the running of the statute of limitations is a federal question. *Portis v. United States*, 483 F.2d 670 (4th Cir. 1973); *Hungerford v. United States*, 307 F.2d 99 (9th Cir. 1962); *Winston Bros. Co. v. United States*, 371 F.Supp. 130 (D.Minn.1973). For the existence of a cause of action upon which the federal statute of limitations is to operate, however, one must look to state law. 28 U.S.C. § 1346(b).

Under Missouri law, a cause of action for tortious conversion exists when one exercises an unauthorized and wrongful act of dominion or ownership over the personal property of another in denial of, or inconsistent with, his right of ownership. *Wirth v. Heavey*, 508 S.W.2d 263 (Mo.App.

---

**2.** Plaintiff contends herein that the May 1, 1973, letter sent by plaintiff's president to the general counsel of HUD constituted plaintiff's claim upon the agency, and that the June 25, 1973, letter in response constituted the agency's final denial of that claim. Assuming that the final denial did occur on June 25, 1973, the filing of this action on September 24, 1973, took place within the six-month limitation period, and defendant makes no contention concerning the timeliness of filing of this action.

1974); *Jackson v. Engert*, 453 S.W.2d 615 (Mo.App.1970); *Commercial Credit Corp. v. Joplin Auto Auction Co.*, 430 S.W.2d 440 (Mo.App.1968). Demand and refusal may evidence a conversion, but are not required if some independent act of conversion is in evidence. *Schulte v. Florian*, 370 S.W.2d 623 (Mo.App.1963). The institution of a legal proceeding which restricts the owner's actual control over his property may give rise to an action for tortious conversion. See Restatement of Torts 2d § 223(a) and § 221(e), at 436 and 426 (1965); Prosser, Law of Torts § 15, at 93 N. 18 (1971); 18 Am.Jur.2d Conversion § 27, at 172, 173. Under the federal standard for determining when such a claim accrues, the statute of limitations begins to run when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged tort. See *Jordan v. United States*, 503 F.2d 620, 622 (6th Cir. 1974); *National Family Ins. Co. v. Exchange National Bank of Chicago*, 474 F.2d 237 (7th Cir. 1973), cert. denied 414 U.S. 825, 94 S.Ct. 129, 38 L.Ed.2d 59); *Las Mendozas, Inc. v. Powell*, 368 F.2d 445 (5th Cir. 1966).

Plaintiff has enumerated the acts of HUD's alleged agents and employees which, taken together, plaintiff asserts give rise to the present action. The first act which plaintiff asserts as giving rise to this cause was defendant's application to this Court for the appointment of a receiver for the collection of rents and profits, including the Medicaid checks, of Mission East, Inc. The receiver, appointed on March 19, 1971, received and expended the first proceeds of the accounts receivable on March 25, 1971. Plaintiff's contention that the "institution of any legal proceeding which restricts the owner's actual control over his property may give rise to an action for tortious conversion" (Reply Brief, p. 3) being true, it appears to the Court that the first act of conversion, if any occurred in March 1971.[3]

That plaintiff was aware of the interference with the personal property here involved by reason of the receivership proceedings is illustrated by the fact that on March 23, 1971, plaintiff notified the Missouri Division of Welfare of the Court's Order appointing the receiver, and the fact that plaintiff received no Medicaid payments thereafter. Thus, even assuming that the May 1, 1973, letter from plaintiff's president to defendant constituted a claim within the meaning of 28 U.S.C. § 2401(b), that claim was presented outside the two-year period from its accrual against the Government. Accepting plaintiff's own theory of conversion in this case, therefore, plaintiff's cause of action accrued on or about March 25, 1971, when the receiver's receipt of the Medicaid checks and his exercise of dominion and control over them contrary to plaintiff's asserted right of ownership established a definitely ascertainable date from which the limitation period can be measured. *Foote v. Public Housing Commissioner*, 107 F.Supp. 270, 274 (W.D. Mich.1952); *Newberg v. Federal Savings and Loan Insurance Corp.*, 317 F.Supp. 1104, 1106 (N.D.Ill.1970). Thus the May 1, 1973, letter was not a claim presented within two years of the date the cause accrued.

Plaintiff asserts, however, that the acts of conversion on the part of defendant must be taken together, and that the wrongful detention of the Medicaid checks by HUD, continuing after plaintiff made a written demand on May 1, 1973, for possession thereof, was the "final act which created a cause of action for conversion under the law of Missouri." (Reply Brief, p. 6) Plaintiff contends that its cause of action did not accrue until its receipt of the June 25, 1973, letter from the regional counsel of HUD denying plaintiff's May 1, 1973, demand for $10,497.02, because receipt of that letter was the "first time that plaintiff became aware of HUD's decision to refuse to com-

---

**3.** In so finding, the Court recognizes that no conversion cognizable under the Federal Tort Claims Act may be committed by a court-appointed receiver. *Cromelin v. United States*, 177 F.2d 275 (5th Cir. 1949); *Foster v.*

*McBride*, 521 F.2d 1304 (9th Cir. 1975). Rather, the Court refers to the act of instituting a legal proceeding to restrict plaintiff's control over the property.

pensate plaintiff for the $10,497.02 in Medicaid receivables." This contention is without merit, as is plaintiff's alternative contention that defendant's conversion constituted a series of misappropriations which continued on or after November 25, 1971, when the Missouri Division of Welfare mailed its last Medicaid check to Mr. Coburn, the receiver.

 Under Missouri law, conversion occurs when the act interfering with the owner's rightful interest takes place; once that act has occurred, it is not necessary that the alleged converter refuse to return the item or to compensate the owner for it in order for a cause of action to exist. *Schulte v. Florian,* supra, 370 S.W.2d at 626. Under the Tort Claims Act, "(o)ne who knows that an injurious tort has been committed against him may not delay the filing of his suit (claim) until the time, however long, when he learns the precise extent of the damage resulting from the tort." *Portis v. United States,* 483 F.2d 670, 672 (4th Cir. 1973); *Ashley v. United States,* 413 F.2d 490, 492 (9th Cir. 1969). Plaintiff may not, in effect, hide its head in sand, ignoring the accrual of a cause of action until the two-year limitation period has expired, and then attempt to circumvent the limitation by alleging a combination of tortious acts or a continuing tort. The inconsistency of plaintiff's position is illustrated by the fact that while plaintiff claims its cause of action did not accrue until receipt of the June 25, 1973, letter from HUD's general counsel, plaintiff also relies on its own president's letter of May 1, 1973, as the formal, written statement of that claim to the agency, without which this Court's jurisdiction herein is lacking.

 The limitation provision of the Federal Tort Claims Act is substantive, not merely procedural; it is to be strictly construed and not extended by implication or by equitable considerations. *Binn v. United States,* 389 F.Supp. 988, 991 (E.D.Wis.1975); *Phillips Pipe Line Co. v. United States,* 299 F.Supp. 768, 772 (W.D.Okla.1969); *Childers v. United States,* 442 F.2d 1299 (5th Cir. 1971), cert. denied, 404 U.S. 857, 92 S.Ct.

104, 30 L.Ed.2d 99. A claim under the Act is extinguished when the limiting time expires, and the claim being extinguished, the Court lacks jurisdiction. *Crown Coat Front Co. v. United States,* 363 F.2d 407 (2d Cir. 1966), rev'd on other grounds 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256. In the present case, it appears to this Court that plaintiff's claim was extinguished in March, 1973.

In addition to the statutory limitation period, a second jurisdictional prerequisite to any claim brought under the Federal Tort Claims Act is the requirement that a claimant initially process his claim to a final denial before the appropriate federal agency. 28 U.S.C. § 2675(a), as amended (1966). *Davis v. United States,* 439 F.2d 1118, 1119 (8th Cir. 1971); *Peterson v. United States,* 428 F.2d 368 (8th Cir. 1970); *Meeker v. United States,* 435 F.2d 1219 (8th Cir. 1970). It follows from plaintiff's assertions, outlined above, that if plaintiff's cause of action did not accrue until June 25, 1973, plaintiff's letter of May 1, 1973, could not have constituted a statement of plaintiff's claim upon the agency, and the June 25, 1973, letter to plaintiff from HUD's general counsel could not have constituted the agency's final denial of plaintiff's claim. In other words, either plaintiff's claim accrued in March, 1971, in which case plaintiff's May 1, 1973, letter was not a timely claim upon the agency and this action is barred pursuant to 28 U.S.C. § 2401(b), or plaintiff's cause accrued on June 25, 1973, as plaintiff also asserts, and plaintiff has failed to pursue its claim through the proper administrative channels as required by 28 U.S.C. § 2675(a). Plaintiff cannot have it both ways.

Accordingly, this Court is without jurisdiction and this action will be dismissed without prejudice, each party to bear its own costs.

IT IS SO ORDERED.