905 F.2d 738
 Regis Ann GOULD, as Parent Guardian and next of friend of
Aaron Russell Gould and Adrienne Marie Gould, Regis Ann
Gould, as Special Administrator of the Estate of Gary
Francis Gould; Regis Ann Gould, Plaintiffs-Appellants,
v.
U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES; Public Health
Service, Defendants-Appellees.
 No. 88-3091.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 5, 1990.
Decided June 8, 1990.
As Amended June 18, 1990.
 
 Joseph Cornelius Ruddy, Jr., Hyattsville, Md., for plaintiffs-appellants.
 Lowell V. Sturgill, Jr., U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.
 Breckinridge L. Willcox, U.S. Atty., Juliet A. Eurich, Asst. U.S. Atty., Baltimore, Md., Sally K. Trebbe, Office of the Gen. Counsel, Dept. of Health and Human Services, on brief, Washington, D.C., for defendants-appellees.
 Before ERVIN, Chief Judge, and RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, CHAPMAN, WILKINSON, and WILKINS, Circuit Judges, sitting en banc.
 CHAPMAN, Circuit Judge:
 
 
 1
 Regis Ann Gould filed this action individually, and in the dual capacity as special administrator of the estate of her late husband, Gary Francis Gould, and as a parent guardian and next friend of her minor children, Aaron Russell Gould and Adrienne Marie Gould, seeking damages for the alleged wrongful death of Gary Francis Gould resulting from alleged medical malpractice. The district court granted the defendants' motion for summary judgment and found that the claim was time barred under 28 U.S.C. Sec. 2401(b). Appellant asserts that her claim was timely because such claim did not accrue until she learned that one of the treating physicians was a federal employee. We find that the cause of action accrued when the plaintiffs learned of both the existence and the cause of the decedent's injury, and we affirm.
 
 
 2
 * On August 27, 1980, the decedent, Gary Francis Gould, began experiencing headache, fever, nausea, stiff neck and other symptoms of illness. These conditions persisted and on the morning of August 30, 1980, he went to the South County Family Health Care Corporation in Anne Arundel County, Maryland, and was treated by James Kevin O'Rourke, M.D., a commissioned officer of the United States Public Health Service assigned to the National Health Service Corps and working at the health center. The Commissioned Corps of the Public Health Service is established and administered pursuant to the Public Health Service Act, 42 U.S.C. Secs. 204 et seq. The National Health Service Corps is established pursuant to 42 U.S.C. Sec. 254d. The purpose of the Corps is to provide health care providers in areas designated as health manpower shortage areas, and the Public Health Service is an agency in the Department of Health and Human Services.
 
 
 3
 After being treated by Dr. O'Rourke, Mr. Gould returned home, but his condition deteriorated. He called Dr. O'Rourke again, and on the afternoon of August 30, 1980, he was admitted to the Anne Arundel General Hospital where Dr. Barry R. Nathanson, M.D., a civilian employee of the United States Public Health Service in the National Health Service Corps, consulted with Dr. O'Rourke about Mr. Gould's condition. Each of these doctors was a federal employee assigned to the South County Family Health Care Corporation in a health manpower shortage area.
 
 
 4
 Numerous tests were performed with negative results and it was thought that the symptoms were from a viral syndrome. However, when a rash developed on September 3, Dr. O'Rourke suspected Rocky Mountain Spotted Fever, and a consultation with an infectious disease specialist confirmed this diagnosis. Antibiotic therapy was immediately begun, but Mr. Gould died at the hospital on September 4, 1980. During the course of treatment, particularly prior to the diagnosis of Rocky Mountain Spotted Fever, members of the Gould family complained about the deterioration in Gould's condition and were advised that the condition was a virus.
 
 
 5
 In a letter of August 8, 1983, plaintiffs' counsel requested information from the Department of Public Health regarding the "exact work status" of Dr. O'Rourke. The Department of Health and Human Services (HHS) was promptly notified of this request and responded to the inquiry. On September 2, 1983, a HHS attorney notified plaintiffs' attorney by telephone of Dr. O'Rourke's status as a federal employee at the time he treated the decedent.[1] The following day, plaintiffs' counsel was advised by HHS that Dr. Nathanson was also a federal employee at the time of such treatment. Plaintiffs' attorney received written confirmation of Dr. O'Rourke's employment status on September 26, 1983, and a similar notice of Dr. Nathanson's status on December 16, 1983.
 
 
 6
 The plaintiffs took no action against the United States at this time, but on September 2, 1983, within hours of the expiration of the claim under Maryland's three-year statute of limitations, plaintiffs initiated a claim against the individual physicians before the Health Claims Arbitration Board alleging negligent care and treatment of the decedent. On December 16, 1985, the action before the Health Claims Arbitration Board was dismissed upon a finding that the doctors were employed by the United States Public Health Service and the alleged wrongdoing fell within the scope of their employment, and they were not subject to suit in a state court or forum pursuant to 28 U.S.C. Sec. 1346(b).
 
 
 7
 In early August 1985, prior to dismissal of the claim before the Health Claims Arbitration Board, an administrative tort claim was presented to the Department of Health and Human Services, Division of Public Health Service, alleging negligence by National Health Service Corp physicians in failing to expeditiously diagnose and treat Gary F. Gould for Rocky Mountain Spotted Fever. This claim was denied in August 1986 on the ground that it was barred by the statute of limitations applicable to claims prosecuted under the Federal Tort Claims Act, 28 U.S.C. Sec. 2401(b).
 
 
 8
 In February 1987, plaintiffs initiated the present action in the United States District Court for the District of Maryland. The defendants raised the bar of the two-year limitation provision contained in 28 U.S.C. Sec. 2401(b). Plaintiffs countered that she had neither direct nor implicit knowledge of the status of the physicians as federal employees, and that the statute of limitations should be tolled until plaintiffs were made aware of the fact that the physicians were federal employees, because the exercise of due diligence would not have revealed this fact. The district court rejected this argument and found that the statutory period had expired, and that the court lacked jurisdiction as a matter of law. We agree and affirm.
 
 II
 
 9
 It is well established that the United States Government, as sovereign, is immune from suit unless it consents to be sued. The terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit. United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). Congress created a limited waiver of sovereign immunity in the FTCA. 28 U.S.C. Secs. 2671-2680. This waiver permits suit only on terms and conditions strictly prescribed by Congress. Honda v. Clark, 386 U.S. 484, 501, 87 S.Ct. 1188, 1197, 18 L.Ed.2d 244 (1967).
 
 
 10
 Although the FTCA gives limited consent to suits against the federal government for torts committed by its employees while acting within the scope of their official duties, the Act specifically requires an initial presentation of a claim to the appropriate federal agency within two years of the accrual of the cause of action and a final denial by that agency as a jurisdictional prerequisite to suit under the Act. 28 U.S.C. Secs. 2401(b), 2675(a); Kielwien v. United States, 540 F.2d 676, 679 (4th Cir.), cert. denied, 429 U.S. 979, 97 S.Ct. 491, 50 L.Ed.2d 588 (1976); West v. United States, 592 F.2d 487, 492 (8th Cir.1979).
 
 
 11
 The applicable statute of limitation within the framework of the FTCA provides: "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues...." 28 U.S.C. Sec. 2401(b). This time limitation is jurisdictional and nonwaivable. Kielwien, 540 F.2d at 679.
 
 
 12
 Statutes of limitation, which "are found and approved in all systems of enlightened jurisprudence," Wood v. Carpenter, 101 U.S. 135, 139, 25 L.Ed. 807 (1879), represent a legislative determination that "even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." Order of Railroad Telegraphers v. Railway Express Agency, 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944). While affording plaintiffs what legislatures deem reasonable time to present claims, statutes of limitation give defendants and courts a degree of protection from having to confront controversies in which the search for truth may be thwarted by the loss of evidence, whether by the death or disappearance of witnesses, fading memories, loss of physical evidence, or the like. United States v. Marion, 404 U.S. 307, 322 n. 14, 92 S.Ct. 455, 464 n. 14, 30 L.Ed.2d 468 (1971); Burnett v. New York Central Railroad Co., 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965).
 
 
 13
 Section 2401(b) represents a deliberate balance struck by Congress whereby a limited waiver of sovereign immunity is conditioned upon the prompt presentation of tort claims against the government. The Supreme Court, in recognizing this balance, has instructed the judiciary to abstain from extending or narrowing Sec. 2401(b) beyond that which Congress intended and thereby defeating its obvious purpose. United States v. Kubrick, 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259 (1979).
 
 
 14
 Applying these principles, federal courts with few exceptions have dismissed complaints where a plaintiff failed to file a claim with the appropriate federal agency within the two-year limitations period, even in cases where the plaintiff's failure to submit a claim in a timely manner was the result of the plaintiff's ignorance of the defendant's status as a federal employee. Flickinger v. United States, 523 F.Supp. 1372, 1375 (W.D.Pa.1981). Courts have held that despite the harsh impact of this rule on plaintiffs, Wilkinson v. United States, 677 F.2d 998, 1001 (4th Cir.), cert. denied, 459 U.S. 906, 103 S.Ct. 209, 74 L.Ed.2d 167 (1982), and "strong equitable considerations notwithstanding, the two-year limitation period of 28 U.S.C. Sec. 2401(b) cannot be tolled or waived." Lien v. Beehner, 453 F.Supp. 604, 606 (N.D.N.Y.1978). See also United Missouri Bank South v. United States, 423 F.Supp. 571, 577 (W.D.Mo.1976) (limitation provision of FTCA not to be extended by implication or by equitable considerations).
 
 
 15
 Although FTCA liability is determined "in accordance with the law of the place where the act or omission occurred," 28 U.S.C. Sec. 1346(b), federal law determines when a claim accrues. Stoleson v. United States, 629 F.2d 1265, 1268 (7th Cir.1980); Portis v. United States, 483 F.2d 670, 672 n. 4 (4th Cir.1973); Sexton v. United States, 832 F.2d 629, 633 n. 4 (D.C.Cir.1987); Wehrman v. United States, 830 F.2d 1480, 1482-83 (8th Cir.1987). In United States v. Kubrick, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the Supreme Court reiterated that the general rule under the FTCA "has been that a tort claim accrues at the time of the plaintiff's injury, "although in medical malpractice cases it is thought to extend "until the plaintiff has discovered both his injury and its cause." Id. at 120, 100 S.Ct. at 358.
 
 
 16
 The clear import of Kubrick is that a claim accrues within the meaning of Sec. 2401(b) when the plaintiff knows or, in the exercise of due diligence, should have known both the existence and the cause of his injury. "This decision signifies a retreat from the expansive view of 'accrual' previously adopted by a number of the circuits, including the Fourth Circuit." Dessi v. United States, 489 F.Supp. 722, 724 (E.D.Va.1980). Under Kubrick, the court concluded in Dessi,
 
 
 17
 nothing more than knowledge of injury and causation is required for the cause of action to accrue. The action accrues even if the claimant believes that his injury was unavoidable and did not indicate negligent treatment. It is the plaintiff's burden, once he knows of his injury and its cause, to determine within the limitations period whether or not to file suit.
 
 
 18
 Id. at 725. See also Gilbert v. United States, 720 F.2d 372, 374 (4th Cir.1983) ("The Supreme Court has determined that a cause of action accrues within the meaning of [28 U.S.C.] Sec. 2401(b) when a prospective plaintiff knows of both the existence of his injury and its cause."); Dearing v. United States, 835 F.2d 226, 228 (9th Cir.1987) ("A medical malpractice claim does not accrue under the FTCA until the plaintiff discovers, or reasonably should have discovered, his injury and its causes."); Wehrman, 830 F.2d at 1483 (same).
 
 
 19
 The question presented by this case is when did the plaintiffs' claim "accrue" within the meaning of the FTCA? Did the cause of action accrue when plaintiffs learned both of the existence and cause of the decedent's injury, or did it only accrue when plaintiffs also learned the legal identity of the alleged tort-feasors as federal employees? We hold that plaintiffs' claim accrued, in accordance with Kubrick, on September 4, 1980, upon the death of Gary Francis Gould. Plaintiffs at this time were aware of the existence of the injury and its cause, including the identity and conduct of attending physicians. This sufficiently armed plaintiffs with the "critical facts" to investigate the claim and present it within the two-year statute of limitations.
 
 
 20
 The plaintiffs argue that in addition to knowledge of the injury and its cause, Kubrick implies that a claim does not accrue until a plaintiff learns the legal identity of the alleged tort-feasor as a federal employee.[2] The statute of limitation should be tolled, plaintiffs continue, when pertinent information such as knowledge of the injury or the legal identity of the tort-feasor is in the control of the putative defendant, unavailable to the plaintiff or at least difficult to obtain. Significantly, the legal identity of the tort-feasor was presumed in Kubrick. Nowhere in Kubrick is any reference to the legal identity of the tort-feasor.
 
 
 21
 This rule has been considered and rejected in this Circuit. In Baker v. United States, 341 F.Supp. 494 (D.Md.1972), aff'd per curiam, No. 72-1708 (4th Cir. Nov. 30, 1972), it was held that an automobile negligence action filed in state court within the three-year Maryland limitation period but more than two years after the accident was forever barred pursuant to 28 U.S.C. Sec. 2401(b). A defendant driver, who was acting within the scope of his government employment at the time of the accident, initially handled the claim through his insurance company and his own attorney. Some five years after the accident the defendant brought the claim to the attention of government officials, after which the government promptly removed the claim to federal court where the United States was substituted as the party defendant. The plaintiff did not discover until after the statute of limitations had run that the driver who allegedly caused the accident was a federal employee acting within the scope of his employment.[3] "All cases cited or found," the district court concluded, "have held that the [FTCA] two-year limitation period applies, and that such suits cannot be remanded to the state court to proceed against the government employee individually." Baker, 341 F.Supp. at 495-96 (citations omitted). The court further stated:
 
 
 22
 That result in the instant case seems unfair, since no one realized until too late that Smith was in the course of his employment by the government at the time of the accident. However, no facts which would ordinarily amount to an estoppel against Smith, his insurer or the government have been shown. Other courts have applied the statute strictly against plaintiffs in circumstances which seem to be more favorable to the plaintiff than those in the cases at bar. See, e.g., Mann v. United States, [399 F.2d 672 (9th Cir.1968) ]. If this case is appealed, I would be happy to be reversed. But under the statute and the authorities, I must dismiss the suits.
 
 
 23
 Id. at 496. We affirmed this judgment of the district court.
 
 
 24
 In Wilkinson v. United States, 677 F.2d 998 (4th Cir.), cert. denied, 459 U.S. 906, 103 S.Ct. 209, 74 L.Ed.2d 167 (1982), a rented car driven by a sailor on business for the Navy collided with the plaintiff's automobile. At the time of the collision, the plaintiff knew that the other driver was employed by the Navy. There was no indication, however, that the plaintiff was aware that the driver was actually on government business. We rejected the plaintiff's assertion that the cause of action did not accrue until he learned that the sailor was acting within the scope of his employment at the time of the accident and thus was covered by the FTCA. Id. at 1000. Speaking for the majority, Judge Murnaghan emphasized that the government employee and government officials responded to the plaintiff's claim in a reasonable, timely and fair manner. Moreover, attorneys for the government in Wilkinson, like those in the case before us, "were not shown to have known that the accident had even occurred until a date more than two years after the accrual of the claim.... No less established is the fact that the Government has not behaved in any unfair way, and that, as between it and [plaintiff], the latter, or, more realistically, his counsel, brought about the consequences resulting from counsel's inaction." Id. at 1000-01. The same observations, it seems, could be made in the case at bar.[4]
 
 
 25
 In Henderson v. United States, 785 F.2d 121 (4th Cir.1986), a substitute U.S. mail carrier collided with the plaintiff's automobile. Although the plaintiff had reason to know that the vehicle which struck her may have been a government vehicle, she argued that her cause of action did not accrue until she ascertained that the driver was a federal employee. In rejecting the argument, we held that there was sufficient information available to the plaintiff to put her on notice that the other driver was an agent of the federal government.
 
 
 26
 The rule which plaintiffs now propose would establish an exception that would change all precedents as to when a medical malpractice action accrues, and would be against the clear admonition in Kubrick that courts should carefully construe the statute of limitation for the FTCA so as not to extend the limited waiver of sovereign immunity beyond that which Congress intended. Id. 444 U.S. at 117-18, 100 S.Ct. at 356-57. Such a holding would greatly expand the rule that was unsuccessfully proposed by the dissent in Wilkinson, because it would place no burden upon a plaintiff or a plaintiff's attorney to exercise reasonable care, to investigate or to take any action to determine the employment status of an alleged tort-feasor.
 
 
 27
 The well-established rule is that once a prospective plaintiff learns of his injury, he is on notice that there may have been an invasion of his legal rights and that he should investigate whether another may be liable to him. Zeleznik v. United States, 770 F.2d 20, 22 (3d Cir.1985), cert. denied, 475 U.S. 1108, 106 S.Ct. 1513, 89 L.Ed.2d 913 (1986).[5]
 
 
 28
 While Wilkinson and Henderson, unlike Baker, arguably differ from the present facts because there was no indication that the defendants in the case sub judice were federal employees, Wilkinson and Henderson indicate that plaintiffs have an affirmative duty to inquire as to the legal identity of the defendant. There is no evidence that Mrs. Gould sought to ascertain or was denied access to information concerning the employment status of the treating physicians prior to the expiration of the limitations period. Neither is there evidence that the treating physicians "held themselves out as agents and employees of the private health facility" so as to mislead or deceive the plaintiffs or otherwise hide their legal identity as federal employees. Kubrick, Baker, Wilkinson and Henderson stand for the proposition that a cause of action accrues once the existence of an injury and its cause are known. The statute of limitations under the FTCA commences to run from the date of accrual and does not wait until a plaintiff is aware that an alleged tort-feasor is a federal employee.
 
 
 29
 The Second Circuit held in Kelley v. United States, 568 F.2d 259, 262 (2d Cir.), cert. denied, 439 U.S. 830, 99 S.Ct. 106, 58 L.Ed.2d 124 (1978), that when the government intentionally delays in order to invoke the statute of limitations, the statute is tolled.[6] In the case at bar, however, there is no evidence that the government stalled the discovery process or otherwise blocked plaintiffs from obtaining information within the limitations period. Indeed, the evidence is to the contrary. While it is true that the employment status of the attending physicians was not made known to plaintiffs at the time treatment was given, it is also true that plaintiffs made no inquiry as to the physicians' employment status until August 1983. When asked, the government responded promptly to plaintiffs' request for this information. Unfortunately, such requests were not made until the statute of limitations had expired. The district court correctly observed: "With the death and its cause discovered on September 4, 1980, due diligence is not present when an initial inquiry about who employed the tort-feasors is made 35 months later and then instituting the administrative tort claim two years after the inquiry."
 
 
 30
 The facts indicate that plaintiffs failed to exercise due diligence. Indeed, there is nothing in the record to suggest that prior to August 1983 plaintiffs' counsel made any effort to investigate the legally significant facts which plaintiffs contend would have been undiscoverable even if due diligence had been exercised. This argument, it seems, impliedly concedes that plaintiffs failed to exercise due diligence in investigating the elements of their claim. Plaintiffs have failed to meet their burden and duty of exercising due diligence.
 
 
 31
 The government is under no obligation to notify every prospective plaintiff of its identity and involvement through its employees in all potential legal actions. Van Lieu v. United States, 542 F.Supp. 862, 866 (N.D.N.Y.1982). The burden is on the plaintiff to discover the employment status of the tort-feasor and to bring suit within the applicable limitations period. See Dessi, 489 F.Supp. at 725 ("It is the plaintiff's burden, once he knows of his injury and its cause, to determine within the limitations period whether or not to file suit."); Zeleznik, 770 F.2d at 23 (once a party learns of his injury he is put on notice of a potential claim and "the burden is upon him to determine within the limitations period whether any party may be liable to him").
 
 
 32
 It will not suffice for plaintiffs to assert baldly that "even due diligence would not have discovered the fact that the physicians" were federal employees. The burden is on plaintiffs to show that due diligence was exercised and that critical information, reasonable investigation notwithstanding, was undiscoverable.[7] No evidence was offered to support the assertion that "critical facts" were undiscoverable. Indeed, the government's prompt response to plaintiffs' request for information contradicts this contention. No impediment, other than plaintiffs' inaction, shielded the physicians' legal identity. In summary, there is neither allegation nor evidence that the government delayed, misled or otherwise obstructed plaintiffs in determining the attending physicians' employment status.
 
 
 33
 Plaintiffs' construction of the limitations statute would obviate the necessity of due diligence, even when the injury and its cause are known and a minimum inquiry would have led plaintiffs to discover in a timely manner the employment status of the treating physicians. This approach would remove incentives for the timely investigation and prompt presentation of claims and would enable a plaintiff to maintain a FTCA action against the government years after plaintiff's injury and its cause are well known if, for any reason, it escaped the plaintiff's attention--even absent reasonable investigation--that the alleged tort-feasor was a government agent acting within the scope of his employment. An open-ended rule would vitiate the very purpose of the statute of limitations.
 
 
 34
 The plaintiffs further contend that their claim should not be barred by the statute of limitations because they were "blamelessly ignorant" of the federal government's involvement, and such involvement could not have been presumed, implied or discovered, even after the exercise of due diligence. The Eighth Circuit, in Wollman v. Gross, 637 F.2d 544, 548-49 (8th Cir.1980), cert. denied, 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981), rejected the suggestion that the doctrine of "blameless ignorance" extends the date of "accrual" until the moment when the plaintiff becomes aware of the defendant's status as a federal employee. The purpose of the statute of limitations is to require the reasonably diligent presentation of tort claims. This may require a plaintiff to obtain legal counsel promptly and together with counsel discover the critical facts and all of their possible legal ramifications so as to enable the plaintiff to bring suit within a reasonable time. Id. at 549. As stated by the Supreme Court in Kubrick:
 
 
 35
 A plaintiff such as Kubrick, armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government.
 
 
 36
 Kubrick, 444 U.S. at 123, 100 S.Ct. at 360. See id. at 128, 100 S.Ct. at 362 (Stevens, J., dissenting) ("A plaintiff who remains ignorant through lack of diligence cannot be characterized as 'blameless.' "); Sexton, 832 F.2d at 633.
 
 
 37
 When the facts of a case become so grave as to alert a reasonable person that there may have been negligence in a patient's treatment, the statute of limitations begins to run against the claimant's cause of action. See West, 592 F.2d at 492-93, quoting Hulver v. United States, 562 F.2d 1132, 1134 (8th Cir.1977), cert. denied, 435 U.S. 951, 98 S.Ct. 1576, 55 L.Ed.2d 800 (1978). In the case at bar the plaintiffs were immediately aware of the failure to properly diagnose and treat and knew that Drs. O'Rourke and Nathanson were the decedent's attending physicians. With this information of the physicians' errors followed by the patient's death, a reasonable person would have been alerted at the time of the death that such death may have been the result of medical negligence.
 
 
 38
 We are not unmindful that a strict adherence to the requirements of the statute of limitations provision under the FTCA often works a substantial hardship on plaintiffs and may have a harsh impact on a party innocent of any impropriety. Statutes of limitations often make it impossible to enforce what are otherwise valid claims. Although we recognize the hardship resulting to the plaintiffs in this case, we have no choice but to apply the law as written. To accept plaintiffs' arguments would be rewriting the FTCA to allow broad, open-ended exceptions to Secs. 2675(a) and 2401(b). Flickinger, 523 F.Supp. at 1376-77. "Although exceptions to the applicability of the limitations period might occasionally be desirable, we are not free to enlarge that consent to be sued which the Government, through Congress, has undertaken so carefully to limit." Mann v. United States, 399 F.2d 672, 673 (9th Cir.1968). See also Wollman, 637 F.2d at 549. As the Supreme Court has instructed, it is clearly the prerogative of Congress, not the judiciary, to reform the terms and scope of waiver of sovereign immunity beyond that which Congress intended. Kubrick, 444 U.S. at 117-19, 100 S.Ct. at 356-358.
 
 
 39
 "It goes without saying," as the Kubrick Court observed, "that statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims." Kubrick, 444 U.S. at 125, 100 S.Ct. at 361. Yet, they serve important, well-established purposes affirmed throughout our jurisprudence. We are bound to give them effect until such time as the creator of such provisions, the legislative branch, exercises its prerogative to amend the statute.
 
 
 40
 AFFIRMED.
 
 SPROUSE, Circuit Judge, dissenting:
 
 41
 I respectfully dissent for the reasons expressed in the original majority opinion in this case. Gould v. U.S. Dept. of Health and Human Services, 884 F.2d 785 (4th Cir.1989).
 
 
 
 [1]
 In his August 8, 1983, letter, plaintiffs' attorney invited the Department to respond to his request by contacting him or his staff by telephone. The notes from office telephone conversations, identified in the record as defendants' exhibit 11, show that HHS personnel attempted to contact the attorney by telephone as early as August 18, 1983. HHS personnel spoke with the attorney's secretary, but the attorney was apparently on vacation and unavailable until September
 
 
 [2]
 The suggestion is made by plaintiffs that the term "cause" means both the cause of the injury from a medical point of view and the legal identity of the alleged tort-feasors. Such a reading of the word "cause," in this context, is not to be found in our legal precedents. Quoting Dyniewicz v. United States, 742 F.2d 484, 486 (9th Cir.1984), the Third Circuit rejected this broad interpretation of "cause": "Discovery of the cause of one's injury, however, does not mean knowing who is responsible for it. The 'cause' is known when the immediate physical cause of the injury is discovered." Zeleznik v. United States, 770 F.2d 20, 23 (3d Cir.1985)
 
 
 [3]
 As in the case at bar, the plaintiff was unaware that the defendant driver was a federal employee, neither was there evidence apparent to others involved in the accident to put them on notice that the defendant was a federal employee acting within the scope of his employment
 
 
 [4]
 The plaintiff in Wilkinson arguably presented a more appealing case than the one before us today in that the case was initiated in a state court prior to expiration of the FTCA statute of limitations. Once the plaintiff was aware of the legal significance of the defendant driver's status as a federal employee, plaintiff sought to remove the suit to federal court. Nevertheless, we barred the federal action because it was filed in federal court shortly after the FTCA statute had run
 Plaintiffs in the case at bar, however, apparently made no attempt to investigate or file their claim until two years and eleven months after plaintiffs knew of the injury and its cause. Plaintiffs did not file an administrative claim with the HHS until nearly five years after Mr. Gould's death and nearly two years after receiving confirmation of the attending physicians' work status. It was six and a half years after the injury before suit was initiated in federal court. Such delays by the plaintiffs surely put defendants at a disadvantage in defending the suit against them.
 
 
 [5]
 We, of course, have no occasion to address the law where the injury is fully revealed but the tortfeasor is unknown and not readily identifiable
 
 
 [6]
 Several courts have held in automobile accident cases involving federal employees that the strict two-year statute of limitations should not bar claims in federal courts when a state court action or an administrative claim was initiated before the two-year period expired, thereby giving the government notice of such a claim within the limitations period. See e.g., McGowan v. Williams, 623 F.2d 1239 (7th Cir.1980); Chambly v. Lindy, 601 F.Supp. 959 (N.D.Ind.1985); Harris v. Burris Chemical, 490 F.Supp. 968 (N.D.Ga.1980). Such exceptions are not universally recognized in the federal courts. Moreover, an exception of this nature would not apply in this case since the plaintiffs did not initiate their first action until more than two years after the death of Mr. Gould
 
 
 [7]
 In oral argument, plaintiffs' counsel excused plaintiffs' failure to exercise due diligence prior to August 1983 by suggesting that Mrs. Gould was reluctant to relive this tragic episode through litigation, and it was not until the Spring or Summer of 1983 that Mrs. Gould felt sufficiently fortified to press forward with her claim. While one is sympathetic to her plight, this is not a legally recognized justification for sleeping on one's claim. As the court acknowledged in Sexton v. United States, 832 F.2d 629, 636 (D.C.Cir.1987):
 [A]ny statute of limitations that puts inquiry burdens on a plaintiff, as this one clearly does, see Kubrick, 444 U.S. at 123 & n. 10, 100 S.Ct. at 360 n. 10, entails a degree of ghoulish behavior. Patients or survivors, whose instinct may well be to shut off from their minds the grim experience through which they have passed, are required instead to follow up on their leads. For persons of any sensitivity this must be a difficult or even repugnant process. Yet, to protect defendants from stale claims, legislatures put potential plaintiffs to the hard choice of proceeding with such inquiries or risking loss of possible claims.